IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 1:20-cv-02420-PAB-SKC

DELMART E.J.M. VREELAND, II,

      Plaintiff,

v.

JARED POLIS, *et al.*,

      Defendants.

---

## ORDER

---

    This matter is before the Court on Defendants' Motion to Dismiss [Docket No. 79]. Plaintiff filed a response.  Docket No. 103.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

## I. BACKGROUND

    Plaintiff Delmart Vreeland initiated this case on August 12, 2020, asserting numerous claims against sixteen defendants based on events dating back to the beginning of his incarceration in the Colorado Department of Corrections ("CDOC") in 2008.  Docket No. 1.  Plaintiff alleges that he has, at various times, acted as a confidential informant for the CDOC Inspector General's Office and other law enforcement agencies gathering information about the criminal activities of other incarcerated persons and CDOC staff members.  *Id.* at 8, 9, 14-15, ¶¶ 5, 8-9, 34-36.  In exchange for this information, plaintiff alleges he was promised he could keep his computer tablet and would remain at Arkansas Valley Correctional Facility ("AVCF") until his parole.  *Id.* at 38.

In alleged retaliation for plaintiff exercising his right to file grievances and lawsuits, including suits filed in this Court, certain defendants began taking adverse actions against him. *See id.* at 8, 17, 19, 20-21, 25, 27, 28-29, ¶¶ 3, 44, 51-52, 55-58, 77, 89. These acts included changing plaintiff's date of parole eligibility, transferring him to seven different facilities in seventy-two days, seizing plaintiff's computer tablet and other legal materials, placing plaintiff at facilities with prisoners who want to harm or kill plaintiff, and transferring plaintiff to facilities with high rates of COVID-19. *Id.* at 28-29, 35.

Plaintiff names the following defendants: Jared Polis, governor of the State of Colorado ("Governor Polis"); Philip J. Weiser, Attorney General of the State of Colorado ("Weiser"); Cole Woodward, Assistant Attorney General ("Woodward"); William V. Allen, Assistant Attorney General ("Allen"); Jennifer S. Huss, Assistant Attorney General ("Jennifer Huss"); Robert C. Huss former Assistant Attorney General ("Robert Huss"); Dean Williams, executive director Colorado Department of Corrections ("Williams"); "The Current Inspector General of CDOC" ("Daigle");[1] Jay Kirby, the former inspector general Colorado Department of Corrections ("Kirby"); Adrienne Jacobson, litigation coordinator Colorado Department of Corrections ("Jacobson");[2] "Director of Offender Services Colorado Department of Corrections" ("Dauffenbach");[3] Mary Carlson, time

---

[1] Defendants identify the current Inspector General of the Colorado Department of Corrections as Sherrie Daigle. Docket No. 79 at 1. Plaintiff uses "Daigle" in his response to defendants' motion. *See, e.g.*, Docket No. 103 at 27. For clarity, the Court will also use Daigle.

[2] Defendants state that plaintiff misnames Adrienne Sanchez as Adrienne Jacobson. Docket No. 79 at 1. The Court will use the name plaintiff uses in the complaint for clarity.

[3] Defendants identify the current Director of Offender Services for the Colorado Department of Corrections as Scott Dauffenbach. Docket No. 79 at 1. Plaintiff accepts

computation manager Colorado Department of Corrections ("Carlson"); Lauren Rivas, therapist, Colorado Department of Corrections ("Rivas"); L. Maynes-Cortez, case manager Colorado Department of Corrections FCF ("Maynes-Cortez"); "James Moore (6360) Colorado Department of Corrections FCF" ("Moore"); and Officer Gillespie, Colorado Department of Corrections FCF Property ("Gillespie"). *Id.* at 1.  Plaintiff asserts nine claims: Claim One, retaliation for engaging in protected conduct in violation of the First Amendment; Claim Two, violation of Fourth Amendment; Claim Three, "conspiracy with Eighth Amen[dmen]t violations;" Claim Four, deliberate indifference to life safety and mental health; Claim Five, violation of duty to protect and & equal treatment of law; Claim Six, violation of Eighth Amendment; Claim Seven, violation of access to courts; Claim Eight, violation of Eighth Amendment failure to protect; and Claim Nine, breach of contract.[4]  *Id.* at 28-38.

Defendants[5] have moved for dismissal of plaintiff's claims in their entirety based on failure to state a claim, absolute immunity, and qualified immunity.  Docket No. 79 at 3, 7-8, 16-17.  Plaintiff filed a response.  Docket No. 103.

## II. STANDARDS OF REVIEW

### A. Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough

---

this in his response.  *See, e.g.*, Docket No. 103 at 27.

[4] The Court construes plaintiff's filings liberally because he is not represented by counsel.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court will not act as a pro se litigant's advocate.  *See Hall*, 935 F.2d at 1110.

[5] Lauren Rivas has not been served and does not join the motion of the other defendants.  Docket No. 79 at 2 n.1.  The Court will use "defendants" to refer to all the defendants except Lauren Rivas.

factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007)).  If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim.  *Id.* at 1191 (quotations omitted).  Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory."  *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (citation omitted).

### B. <u>Absolute Immunity</u>

"An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of immunity." *Imbler v. Pachtman*, 424 U.S. 409, 419 n.13 (1976).  Defendant bears the burden of establishing that he is entitled to absolute immunity.  *Benavidez v. Howard*, 931 F.3d 1225, 1229 (10th Cir. 2019).  The Tenth Circuit has "recognized absolute immunity as extending to 'government lawyers involved in civil proceedings.'"  *Id.* (quoting *Robins v. Volkswagenwerk AG*, 940 F.2d 1369, 1373 n.4 (10th Cir. 1991)).  A court is to examine whether the action of the defendant is within the claimed immunity, not whether the status or office of the defendant confers immunity.  *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1195 (10th Cir. 2010).

### C. <u>Qualified Immunity</u>

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield

officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  A court should resolve questions of qualified immunity at the earliest possible stage of litigation.  *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987).  However, a plaintiff facing a qualified immunity challenge does not have a heightened pleading standard.  *Currier v. Doran*, 242 F.3d 905, 916-17 (10th Cir. 2001).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct."  *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted).  Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'"  *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008)).

## III. ANALYSIS

Defendants move for dismissal of each claim in this case.  Docket No. 79 at 3. Defendants raise several arguments that individual defendants should be dismissed

from this lawsuit, *id.* at 9-18, followed by arguments that individual claims or portions of claims by plaintiff should be dismissed as to every defendant, *id.* at 18-45.  For clarity, the Court will address each argument in turn beginning with arguments that address individual defendants and groups of defendants.

### A. Governor Jared Polis

In his complaint, plaintiff alleges Governor Polis and several other defendants "were all made aware . . . by letter, email, telephone and face to face conversations of [plaintiff's] work as [an] informant, law suits [sic], grievances," and the retaliation he allegedly experienced because of them.  Docket No. 1 at 24-25, ¶ 74.  He further alleges Governor Polis and the other defendants "subjected Plaintiff to Eighth Amendment violations when they caused or allowed Plaintiff. . . to be transferred to a max security. . . prison and to be placed in the same housing unit as the very gang members [sic] whom sworn to murder Plaintiff."  *Id*. at 33.  Plaintiff argues Governor Polis had a "duty to protect Plaintiff from the acts complained of in [his] complaint."  *Id.* The Court agrees with Governor Polis that the complaint fails to plausibly allege his personal participation.

Personal participation is an essential allegation in a civil rights action.  *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976).  To maintain a § 1983 claim, a plaintiff must allege facts showing the defendant was "personally involved in the decisions leading to Plaintiff's mistreatment."  *Escobar v. Reid*, 668 F. Supp. 2d 1260, 1290 (D. Colo. 2009).  A plaintiff must establish an affirmative link between the alleged constitutional violation and each defendant's participation, control, or direction. *Serna v. Colo. Dept. of Corr.*, 455 F.3d 1146, 1152-53 (10th Cir. 2006).  "Over time, the

'affirmative link' language has evolved to require three elements: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Laurienti v. Bicha*, No. 14-cv-02592-NYW, 2016 WL 496047, at *12 (D. Colo. Feb. 9, 2016). "It is particularly important that plaintiffs make clear exactly *who* is alleged to have done *what* to *whom*, as distinguished from collective allegations." *Oakley v. Williams*, No. 21-cv-01763-CMA-NYW, 2022 WL 266766, at *14 (D. Colo. Jan. 28, 2022) (quoting *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013)), *report and recommendation adopted*, No. 21-cv-01763-CMA-NYW, 2022 WL 540656 (D. Colo. Feb. 23, 2022).

As it is relevant to Governor Polis, plaintiff has only pled vague, conclusory, and collective allegations against him. Although plaintiff alleges Governor Polis and the other defendants were informed of the salient information by various communication methods, there are no factual details (such as who contacted whom, when these communications were made, and what specifically was said) to make these allegations anything other than merely consistent with a theory of liability. *See* Docket No. 1 at 24-25, ¶ 74. Plaintiff's allegations regarding Governor Polis allowing or causing him to be transferred fare no better because they, too, are collective allegations that make no attempt to distinguish between the defendants. *Id.* at 33. Finally, plaintiff's assertion that Governor Polis had a duty to protect him, *id.*, is simply a legal conclusion masquerading as a fact.[6] Thus, the Court will dismiss Governor Polis from this lawsuit.

---

[6] Plaintiff has offered no legal theory as to how Governor Polis would have the authority to prevent or cause a prison transfer. The authority to transfer incarcerated persons is vested solely in the Executive Director of the Colorado Department of Corrections. Colo. Rev. Stat. §§ 16-11-308(5); 17-1-105(1)(a).

**B. Attorney General Defendants**

In addition to Colorado Attorney General Weiser, plaintiff names current and former Assistant Attorneys General Cole Woodward, William Allen, Jennifer Huss, and Robert Huss (collectively the "AG Defendants") as defendants.  Defendants argue, without individually addressing each AG Defendant, that each AG Defendant is entitled to absolute immunity for all of plaintiff's claims against them and that plaintiff fails to allege the personal participation of each AG Defendant.[7]  *See* Docket No. 79 at 13-19.  Plaintiff's response takes issue with defendants' articulation of plaintiff's claims and allegations, frequently stating defendants identify nonexistent allegations, but does not individually address the personal participation of any of the AG Defendants.  *See* Docket No. 103 at 13-27.

### 1. Absolute Immunity

Defendants argue that the AG Defendants are entitled to absolute immunity for actions that are considered advocacy including "[a]n attorney filing pleading with a court . . ., presenting arguments about contested matters, [and] providing a client with legal analysis and opinion regarding a client's rights or obligations."  Docket No. 79 at 17.  Plaintiff responds that defendants have not carried their burden of establishing absolute immunity because defendants fail to specifically identify the actions taken by each AG defendant that were protected actions.  Docket No. 103 at 23.

Under the doctrine of prosecutorial immunity, government attorneys "are absolutely

---

[7] Defendants also argue that plaintiff fails to state plausible claims in support of their argument seeking to dismiss the AG Defendants.  Docket No. 79 at 13-15.  Because these arguments address plaintiff's claims broadly, the Court will address these arguments and plaintiff's responses in the portion of the order dealing with each claim.

immune from civil liability for damages for acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of [their] role as [advocates] for the State." *Stein v. Disciplinary Bd. Of Sup. Ct. of N.M.*, 520 F.3d 1183, 1193 (10th Cir. 2008) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).  While this doctrine was traditionally limited to the actions of government prosecutors in criminal proceedings, *see Mink v. Suthers*, 482 F.3d 1244, 1258 (10th Cir. 2007) (noting that, "[t]raditionally, the doctrine [of prosecutorial immunity] did not apply to other public officials" and was "limited to suits for malicious prosecution and defamation"), courts have extended it to "bar officials charged with the duties of investigating, drawing up, and presenting cases involving attorney discipline," *see, e.g.*, *Stein*, 520 F.3d at 1193 (internal quotation marks omitted) (citing *Clulow v. Oklahoma*, 700 F.2d 1291, 1298 (10th Cir. 1983)), and government defense attorneys involved in civil litigation.  *See, e.g.*, *Benavidez v. Howard*, 931 F.3d 1225, 1231-32 (10th Cir. 2019) (holding that absolute immunity barred claims based on acts taken by government defense counsel in civil case).  The "determinative factor is advocacy." *Mink*, 482 F.3d at 1261 (internal quotation marks and citation omitted).  Thus, "the more distant a function is from the judicial process, the less likely absolute immunity will attach." *Id.* (internal quotation marks and citation omitted).  The Tenth Circuit summarized "the rule of absolute immunity as applied to government attorneys" as follows:

> A government attorney's administrative duties and those investigatory functions that do not closely relate to an advocate's preparation for judicial proceedings are not entitled to absolute immunity.  Rather, absolute immunity shields those acts undertaken by a government attorney in preparation for judicial proceedings *and* which occur in the course of his or her role as an advocate for the government.

*Benavidez*, 931 F.3d at 1231 (citing *Buckley*, 509 U.S. at 273; *Mink*, 482 F.3d at 1261).

The parties correctly identify that the Court should examine "the nature of the function performed, not the identity of the actor who performed it." *Id.* at 1230 (quoting *Buckley*, 509 U.S. at 268). The Tenth Circuit has ruled that "[p]ublic officials who seek absolute immunity, i.e., an absolute exemption from personal liability for allegedly unconstitutional conduct, bear the burden of showing that public policy requires an exemption." *Id.* at 1229.

Plaintiff argues defendants must justify each individual action alleged in the complaint, separated to address each of plaintiff's claims individually. Docket No. 103 at 22. Defendants do not address each defendant's actions individually and instead identify actions that they argue qualify for absolute immunity. *See* Docket No. 79 at 17. Plaintiff argues that absolute immunity does not apply here because defendants' argument "made in generic terms" fails to "address each claim made against each attorney and to specifically state how the specific conduct complained of was covered by absolute immunity." Docket No. 103 at 22-24. In support, plaintiff cites an order from Magistrate Judge Crews in one of plaintiff's other cases that ruled that spreading word to CDOC officials to stop assistance to plaintiff and preventing plaintiff's transfer between facilities were not actions taken in preparation for a judicial proceeding and were not entitled to absolute immunity. *Id.* at 23 (citing *Vreeland v. Huss*, No. 18-cv-00303-PAB-SKC, 2021 WL 954726, at *5 (D. Colo. Feb. 15, 2021), *report and recommendation accepted*, 2021 WL 1171670, at *9 (D. Colo. March 29, 2021)). *Huss*, however, accepted that defendant was shielded by absolute immunity "for his conduct in advising his client not to settle." 2021 WL 1171670, at *3 n.1. Plaintiff argues that defendants' failure to identify claims and actions that absolute immunity applies to

dooms defendants' arguments in this case.  Docket No. 103 at 23.  The Court disagrees.

Much of the complaint alleges that defendants took action in tandem, without explaining which defendant took which action.  *See, e.g.*, Docket No. 1 at 28-29. Although defendants have the burden of establishing absolute immunity based on specific actions, defendants cannot be more specific than the complaint in identifying actions each defendant allegedly took.  Like in *Huss*, absolute immunity is not granted broadly to actors and instead applied to specific actions.  Here, defendants identify specific actions that support absolute immunity.  *See* Docket No. 79 at 17, 12.  The Court does not agree with plaintiff that the burden of establishing absolute immunity requires defendants to examine each defendant's action individually as such action relates to each claim, given that some actions are alleged as being taken by groups of defendants and the same action is involved in multiple claims.  The Court will separately address the actions each individual defendant is alleged to have taken considering individual and group allegations to examine the specific actions defendants identify, but decline to deny absolute immunity broadly on the basis of a lack of specificity from defendants as plaintiff requests.

### 2. Personal Participation

Defendants argue each AG Defendant is entitled to qualified immunity on plaintiff's claims because plaintiff fails to allege each of the AG Defendants' personal participation in any violation of plaintiffs' constitutional rights.  Docket No. 79 at 11-13.  Arguments that an individual defendant was not personally involved in the violation of a plaintiff's rights are properly considered under the first prong of a qualified immunity analysis.

*See Buck v. City of Albuquerque*, 549 F.3d 1269, 1279 (10th Cir. 2008). Although neither plaintiff nor defendants perform a separate personal participation analysis for each defendant, the Court will address the personal participation of each defendant separately because "defendants' entitlement to qualified immunity, turn[s] on an individual assessment of each defendant's conduct and culpability." *Pahls*, 718 F.3d at 1233. Additionally, for the purpose of assessing personal participation, the Court assumes plaintiff alleges a cognizable constitutional violation.

### 3. Cole Woodward

Plaintiff brings Claims One, Four, and Seven against AG Defendant Woodward for retaliation, deliberate indifference, and denial of access to the courts, all in violation of plaintiff's constitutional rights. Docket No. 1 at 28-29, 32-34, 35-37. Defendants argue plaintiff's claims against Woodward fail because plaintiff fails to allege Woodward's personal participation and because he is entitled to absolute immunity. Docket No. 79 at 13.

Plaintiff alleges Woodward "[w]as acting as Assistant A.G. when he violated Plaintiff's rights." Docket No. 1 at 3. Plaintiff makes the following allegations involving Woodward: certain defendants were "informed" of "lawsuits, grievances, retaliation, altered parole date, [and] lies to the federal court by Defendants C. and J. Huss, Woodward, Allen, and Jacobson," *id.* at 24, ¶ 74; in response to the Court's order in a different case, "Defendants Weiser, Woodward, Jacobson, and Maynes-Cortez asserted to the court in pleadings and sworn affidavits that Plaintiff was basically lying and that he had access to law library [sic] and all of his legal materials," *id.* at 25, ¶ 78; Defendants Weiser, Woodward, Williams, and Jacobson provided the Court with a

signed affidavit from an unidentified CDOC associate warden that included lies.  *Id.* at 26, ¶ 86.[8]  None of the allegations involving Woodward allege he took any action as an individual; each action is alleged to have been taken by a group of defendants including Woodward.

Claim One, plaintiff's retaliation claim, alleges "Defendant[s] Weiser, Woodward, Williams, Jacobson and Gillespie retaliated against Plaintiff for engagin[g] in protected conduct when they used a non stop [sic] 72 days 7 prison transfer status to review and seize all of Plaintiff's legal materials, law books, case files[,] and tablet computer, and when they presented to the U.S. District Court . . . a pleading containing known intentional lies asserting they did not know where any law books, or case files were located."  *Id.* at 28.  The retaliation claim does not specify which defendants are alleged to have participated in the transfer and seizure plaintiff alleges and which defendants submitted a pleading with lies.  In the specific allegations surrounding plaintiff's transfer and seizure, plaintiff does not mention Woodward.  *See id.* at 10-11, 17, ¶¶ 13-21, 42-43.  It appears Woodward is involved in plaintiff's first claim based only on the allegation that he submitted lies to the Court about plaintiff's legal materials.

Defendants argue that "filing [a] pleading with a court" such as an affidavit is an action protected by absolute immunity.  Docket No. 79 at 12, 17, ¶ 4.  The Court agrees. The Tenth Circuit has ruled that "government defense attorney who, in the course of a

---

[8] Plaintiff argues defendants mischaracterize this allegation because "nowhere in the complaint does Plaintiff allege that anyone submitted any affidavit by any 'warden' to anything."  Docket No. 103 at 18.  The complaint alleges Woodward, among others, responded to the Court by "sworn affidavit supplied by a CSP Associate Warden." Docket No. 1 at 26, ¶ 86.  The basis for plaintiff's argument that defendants improperly characterize this statement of fact is unclear.

civil adjudication, prepares a motion and arranges for the presentation of evidence on the court record by way of affidavit in support of the motion, is absolutely immune from a collateral § 1983 suit for damages based on the filing of such motion and affidavit." *Benavidez*, 931 F.3d at 1232.  Plaintiff's response emphasizes that "the defense failed to explain how lying in sworn declarations . . . [is] covered by immunity of any kind," Docket No. 103 at 23, but an absolute immunity analysis "concentrates 'on the conduct for which immunity is claimed, not on the harm that the conduct may have caused or the question whether it was lawful.'" *Benavidez*, 931 F.3d at 1232 (quoting *Buckley*, 509 U.S. at 271).  Even if an affidavit contains lies, submitting an affidavit to the Court is protected by absolute immunity.  The Court finds Woodward is entitled to absolute immunity on plaintiff's retaliation claim and will grant defendants' motion to dismiss defendant Woodward on Claim One.

Claim Four, plaintiff's deliberate indifference claim, alleges "Defendant[s] Polis, Weiser, Woodward, Allen, J. Huss, R. Huss, Williams, [Daigle], Kirby, Jacobson, [Dauffenbach], all had personal knowledge of Plaintiff's acting as confidential informant" and that each of those defendants subjected plaintiff to Eighth Amendment violations "when they caused and or allowed" plaintiff to be transferred to a housing unit with gang members who planned to murder plaintiff.  Docket No. 1 at 33.  It is unclear if absolute immunity applies to Woodward for this claim because it is unclear what actions plaintiff alleges Woodward took.  Plaintiff alleges Woodward had a duty to plaintiff and knew he was acting as a confidential informant, but plaintiff does not explain what action Woodward took to allow or cause his transfer between facilities.  Plaintiff's fourth claim against defendant Woodward is more appropriately addressed under qualified immunity

analysis.

Where, as here, a violation is based on a government employee's direction of other employees, a plaintiff must establish an affirmative link between the alleged constitutional violation and the defendant's participation, control, or direction.  *Serna*, 455 F.3d at 1152-53.  Plaintiff "fails to isolate the allegedly unconstitutional acts" taken by Woodward in relation to his deliberate indifference claim.  *Robbins*, 519 F.3d at 1250.  Because there are no allegations that Woodward took any actions to violate plaintiff's rights or support for the allegation that he caused plaintiff to be deprived of his constitutional rights without directly participating in a violation, *see Buck*, 549 F.3d at 1279, Woodward is entitled to qualified immunity on plaintiff's deliberate indifference claim, and the Court will grant the portion of defendants' motion that requests dismissal of defendant Woodward from Claim Four of plaintiff's complaint.

Plaintiff's seventh claim for violation of access to courts alleges several defendants, including Woodward, have hindered plaintiff's valid claims by lying to the Court about plaintiff's access to law books and legal case files and about the reasons for plaintiff's transfer to a max security prison.  Docket No. 1 at 36.  In this claim, plaintiff alleges specific submissions by Woodward and other defendants to the Court contained lies. *See id*.  This claim, like plaintiff's retaliation claim, is also predicated on defendants submitting court filings.  Accordingly, for the same reasons that Woodward is entitled to absolute immunity for plaintiff's retaliation claim, he is entitled to absolute immunity for plaintiff's access to courts claim.  Because each individual claim against Woodward is dismissed, the Court will grant the portion of defendants' motion to dismiss that seeks dismissal of defendant Cole Woodward from this case.

### 4. William Allen

Plaintiff brings Claims Four and Seven against AG Defendant Allen for deliberate indifference and denial of access to the courts in violation of plaintiff's constitutional rights.  Docket No. 1 at 32-34, 35-37.  Plaintiff alleges Allen "[w]as acting as Assistant A.G. when he violated Plaintiff's rights."  *Id.* at 4.  Plaintiff alleges defendants Weiser, Allen, and Jacobson falsely asserted that plaintiff was ordered to undergo Sex Offender Treatment in a court filing and that they used the theory to reject plaintiff's offer of settlement in a separate case.[9]  *Id.* at 18, ¶ 48.

Claim Four, plaintiff's deliberate indifference claim against Allen, is predicated on defendants allowing plaintiff to be placed in a housing unit with gang members who intended to murder plaintiff.  *Id.* at 33.  Plaintiff does not allege Allen knew his transfers between facilities were happening, that he ordered the transfers, or that he had any power to stop them.  *See id.*  Plaintiff alleges he was told that defendants Daigle, Dauffenbach, and Jacobson caused plaintiff's transfer, without connecting those three defendants to Allen.  *Id.* at 20-21, ¶ 57.  Plaintiff only alleges Allen "had personal knowledge of Plaintiff's acting as confidential informant."  *Id.* at 33.  Plaintiff's failure to connect Allen in any way to the constitutional violation alleged in his Fourth Amendment claim is insufficient to put Allen on notice of what he personally is alleged to have done to violate plaintiff's rights.  Allen is entitled to qualified immunity on plaintiff's deliberate

---

[9] Plaintiff alleges he sought sanctions, prosecuted Allen in federal court, and filed an official complaint against Allen with defendants Daigle and Kirby for "felony perjury." Docket No. 1 at 18, ¶ 50.  The complaint alleges further "[o]ne week later Plaintiff was told to either drop his attempt to prosecute Allen and Jacobson [sic], to drop and stop his constant grievances and lawsuits, or face severe consequences."  *Id.* at 19, ¶ 51. The complaint does not indicate who made this threat or that Allen had any connection to whoever made the threat.  *See id.*

indifference claim based on plaintiff's failure to allege any facts in support of Allen's participation in the deprivation of plaintiff's constitutional rights.

Claim Seven, plaintiff's access to courts claim, alleges that Allen submitted false information to the Court stating plaintiff was ordered to undergo sex offender treatment. *Id.* at 36.  Plaintiff alleges he filed a motion requesting an injunction ordering CDOC to correct his offender classification code and to transfer plaintiff to a new facility, *id.* at 17-18, ¶ 47; Weiser, Allen, and Jacobson submitted a response to plaintiff's motion for an injunction that incorrectly stated Jacobson knew plaintiff was ordered to undergo sex offender treatment, admitted that "they used this same theory in order to reject the offer to settle" in a different case, and attached an affidavit by Jacobson swearing that Jacobson was in possession of an order stating plaintiff was to undergo sex offender therapy.  *Id.* at 18, ¶ 48.

The submission of filings in a case by a government attorney is an action protected by absolute immunity.  *Benavidez*, 931 F.3d at 1232.  Advising a client to settle is an action protected by absolute immunity.  *Huss*, 2021 WL 1171670, at *3 n.1.  Plaintiff does not allege Allen took any action beyond advising a client to settle and filing documents.  *See* Docket No. 1 at 35-37.  Allen is entitled to absolute immunity for Claim Seven, plaintiff's access to courts claim.  Because each individual claim against Allen is dismissed, the Court will grant the portion of defendants motion that seeks dismissal of Allen from this case.

### 5. Philip Weiser

Plaintiff brings claims for retaliation in Claim One, deliberate indifference in Claim Four, and violation of access to courts in Claim Seven against Weiser.  *Id.* at 28-29, 32-

34, 35-37.  Plaintiff alleges that Weiser was the Attorney General of Colorado at the time plaintiff filed his complaint.  *Id.* at 3.  The complaint makes the following allegations surrounding Weiser: Weiser submitted a response to a motion plaintiff made in a separate case with information that Weiser knew was false, *id.* at 18, ¶ 48; in February 2020, Weiser was made aware of plaintiff's service as an informant and his transfer between facilities, and Weiser, among others, stated "they would make it right," *id.* at 24-25, ¶ 74; the same group of defendants, including Weiser, "took no action at all and allowed Plaintiff to sit in a 24 hour lockdown room" from February 2020 until April 2020, *id.* at 25, ¶ 75; in response to an order from this Court, Weiser asserted plaintiff was lying and that he had access to a law library and legal materials, impeding plaintiff's legal claims, *id.*, ¶¶ 78-79; in response to plaintiff's motion for a protective order, Weiser filed an opposition to plaintiff's motion that included lies and an affidavit containing lies, *id.* at 26, ¶ 86; and "Defendant[s] Polis and Weiser designed a scheme to grant early release to prisoners.  Polis and Weiser refused any release to any non-violent sex offender and singled them out."  *Id.* at 27, ¶ 90.

Claim One, plaintiff's retaliation claim, alleges Weiser, among others, retaliated against plaintiff by using a transfer to seize plaintiff's legal materials and by filing a pleading containing lies in this Court.  *Id.* at 28.  Plaintiff's allegations about filing legal materials are no different from the allegations that Woodward and Allen filed documents with intentional lies; plaintiff identifies action taken in advocacy as part of the judicial process, and the Court finds Weiser is entitled to absolute immunity for the same reasons.  To the extent plaintiff's allegations in his retaliation claim address a failure to prevent his transfer between facilities, the Court finds qualified immunity applies.  Like

the allegations against Woodward, plaintiff does not allege Weiser caused his transfer or that Weiser set in motion events that caused his transfer.  Plaintiff alleges Weiser was informed of plaintiff's transfers after the fact, *id.* at 24, ¶ 73, and that he was part of a group of defendants that promised to make it right, *id.* at 24-25, ¶ 74, but knowledge of the transfers after they took place is not the same as alleging Weiser caused the transfers or allowed them.  Plaintiff has not sufficiently alleged Weiser's personal participation in plaintiff's transfer between facilities.  The Court will dismiss Claim One of plaintiff's complaint against Weiser.

Claim Four, plaintiff's deliberate indifference claim, alleges Weiser had personal knowledge that plaintiff was acting as a confidential informant for "HIM" or "HIS OFFICE," that he had a duty to provide reasonable safety for plaintiff, that he allowed plaintiff "to be subjected to the transfers and conduct of all other Defendants" that plaintiff alleges in the complaint, and that he caused plaintiff "emotional distress, seizures, injury to face and head, blood pressure, fear and worry" based on a failure to act.  Docket No. 1 at 33-34.  Nothing in this claim states how Weiser could have acted to prevent harm to plaintiff caused by the transfers.  As with allegations regarding Governor Polis, plaintiff provides no facts showing how Weiser played any role in plaintiff's transfer.  Plaintiff claims that, after Weiser promised to "make it right," Weiser took no action and allowed plaintiff to sit in a 24 hour lockdown room for two months. *Id.* at 25, ¶ 75.  However, without advance knowledge of plaintiff's transfer, plaintiff does not explain or allege how Weiser caused his transfers or could have reversed his transfer.  *Id.* at 24-25, ¶¶ 74-76.  Based on plaintiff's failure to show Weiser's personal participation in plaintiff's deliberate indifference claim, the Court will grant dismiss Count

Four against Weiser with prejudice.

Claim Seven, plaintiff's claim for violation of access to the courts, only alleges that Weiser, among others, lied to the Court repeatedly. *Id.* at 36. None of plaintiff's allegations state Weiser took any action alone or outside of the action Woodward and Allen are alleged to have taken. *See id.* Weiser, like Woodward and Allen, is entitled to absolute immunity for any filings he submitted in a judicial proceeding and for advising a client on a settlement. Because plaintiff does not allege any actions Weiser took in violation of his right to access courts that would not be covered by absolute immunity, the Court will dismiss Claim Seven against Weiser. Each individual claim having been dismissed, the Court will grant the portion of plaintiff's motion seeking dismissal of Weiser from this case.

### 6. Jennifer Huss

Plaintiff brings Claim One for retaliation, Claim Three for Conspiracy, Claim Four for deliberate indifference, and Claim Six for violation of Eighth Amendment against Jennifer Huss.[10] *Id.* at 28-29, 30-35. The complaint alleges Jennifer Huss "[w]as acting as Assistant A.G. when she violated plaintiff's rights." *Id.* at 4. Plaintiff alleges that Jennifer Huss previously placed calls and sent emails that prevented plaintiff's transfer to a lower-level facility to prevent plaintiff from entering into a settlement agreement with the Attorney General's Office, *id.* at 17, ¶¶ 42-45; on December 26, 2019, Jennifer Huss

---

[10] Plaintiff brings Claim Six for deliberate indifference against "S. Huss" based on being exposed to COVID-19 as result of his "retaliatory transfer." Docket No. 1 at 35. Defendants assume this refers to Jennifer Huss, *see* Docket No. 79 at 13, and plaintiff does not respond to that assertion in response to defendants' motion. *See* Docket No. 103 at 50. The Court will assume defendants are correct and that Claim Six is made against Jennifer Huss.

conspired with her husband Robert Huss, Jacobson, and Carlson to harm plaintiff by changing his parole eligibility date from 2044 to 2144, *id.* at 19, ¶ 52; and that Jennifer Huss was aware that people who wanted plaintiff dead for informing on them were housed at Crowley, Limon, Sterling, Fremont, Buena Vista, and CSP. *Id.* at 20, ¶ 54. Defendants do not argue that absolute immunity applies to the actions Jennifer Huss is alleged to have taken, *see* Docket No. 79 at 12, 17, and the Court will decline to evaluate whether she is entitled to absolute immunity. Instead, the Court will evaluate defendants' argument that plaintiff fails to allege specific facts that support Jennifer Huss' personal participation in plaintiffs' claims.

Claim One for retaliation alleges Jennifer Huss retaliated against plaintiff for grievances, lawsuits, and complaints to law enforcement officials that plaintiff filed against Jennifer Huss, that Jennifer Huss caused his transfer to seven facilities in seventy-two days, and that Jennifer Huss retaliated against plaintiff for his lawsuit against her by altering plaintiff's parole eligibility date. Docket No. 1 at 28-29. The Court previously ruled that allegations that Jennifer Huss called CDOC officials to prevent plaintiff's transfer to a lower-level facility sufficiently alleged a First Amendment retaliation claim. *See Huss*, 2021 WL 1171670, at *4. In this case, plaintiff mentions the phone calls placed to prevent his transfer to a lower-level facility that formed the basis of the claim in *Huss*, Docket No. 1 at 17, ¶¶ 41-45, but bases his retaliation claim on a different incident, namely, his transfer out of AVCF in February 2020 and the six transfers that followed. *Id.* at 20-26, 28-29, ¶¶ 55-80. Plaintiff alleges Jennifer Huss conspired with Robert Huss, Jacobson, and Carlson "to harm Plaintiff for engaging in protected conduct" by altering his parole eligibility date ("PED") and separately alleges

he was told Daigle, Dauffenbach, and Jacobson overrode the stop to his transfer out of AVCF and ordered that he be sent to Limon Correctional Facility "LCF." *Id.* at 19-21, ¶¶ 52, 57. Plaintiff does not connect to his seventy-two day transfer beginning in February 2020 to the previous impediment of his transfer to a lower-level facility or the conspiracy to alter his parole eligibility date ("PED") that is at issue in his retaliation claim.

Defendants argue plaintiff implausibly alleges that Jennifer Huss had a role in plaintiff's transfer, analogizing to *Jenner v. Brightwell*, 14-cv-00916-RBJ-KMT, 2016 WL 1248663, at *4–5 (D. Colo. Mar. 29, 2016). Docket No. 79 at 15. In *Jenner*, a prisoner alleged that defendant, an assistant attorney general, played a role in an allegedly retaliatory transfer between facilities because she knew plaintiff was going to be transferred and she filed a motion to dismiss relying on plaintiff's transfer on the same day his transfer was processed, after it had previously been delayed. 2016 WL 1248663, at *1. The court found that knowledge of the transfer and temporal proximity of a filed motion were insufficient to allege an attorney general participated in a transfer because neither plausibly alleged the defendant's personal involvement. *Id.* at *5.

Defendants argue that plaintiff similarly fails to connect Jennifer Huss to his transfers beginning in February 2020. Docket No. 79 at 20. Plaintiff responds that the complaint must be taken as a whole to understand plaintiff's claims. Docket No. 103 at 28. Plaintiff alleges Jennifer Huss "caused" the transfers, Docket No. 1 at 28, but beyond alleging that she previously engaged in a campaign to prevent his transfer to a lower-level facility and agreed to alter his PED in 2019, plaintiff does not allege that Jennifer Huss took retaliatory actions after 2019. Even considering the complaint as a whole,

there are no allegations connecting Jennifer Huss to plaintiff's transfers.  In Claim Three, plaintiff's conspiracy claim, plaintiff alleges Jennifer Huss, among other defendants, "designed a scheme to transfer Plaintiff away from AVCF," that these defendants "discussed on telephone and email the seizure of all of Plaintiff's legal materials," threatened plaintiff's witnesses who are CDOC employees, and "knowingly ordered Plaintiff to be transferred from AVCF to Limon," but these assertions are not supported by specific facts.  *Id.* at 30-31.  Plaintiff's factual allegations on his transfers in February 2020 do not mention Jennifer Huss, *id.* at 20-21, ¶¶ 55-58, his allegations regarding emails Jennifer Huss sent do not involve his February 2020 transfers, *id.* at 17, ¶¶ 42-44, and his allegations on the seizure of his legal materials only specify that Gillespie was involved, *id.* at 25, ¶ 76, who Jennifer Huss was not alleged to have conspired with.  *Id.* at 19, ¶ 52.

Plaintiff has not alleged that Jennifer Huss participated in his transfers beginning in February 2020.  Plaintiff may not rely on allegations of the conduct by other defendants or groups of defendants to allege a claim against Jennifer Huss.  Although the "occasional use of collective references to 'the Defendants' . . . does not automatically defeat" a § 1983 claim, *Bledsoe v. Carreno*, 53 F.4th 589, 609 (10th Cir. 2022), in order to survive a motion to dismiss, "plaintiff must 'make clear exactly <u>who</u> is alleged to have done <u>what</u> to <u>whom</u>, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.'"  *Id.* (quoting *Robbins*, 519 F.3d at 1250).  Plaintiff has not alleged that Jennifer Huss' actions to prevent a previous transfer to a lower-level facility are connected to his transfer in February 2020 or alleged any actions Jennifer Huss took that caused

23

plaintiff's transfers.  The Court will dismiss this portion of plaintiff's retaliation claim against Jennifer Huss.

Claim One alleges another theory of retaliation, namely, that Jennifer Huss retaliated against plaintiff by altering his parole eligibility date.  Docket No. 1 at 28.  The allegations in the complaint surrounding a change to plaintiff's PED are: in 2014, CDOC corrected an error in plaintiff's sentence making his PED 2026, *id.* at 8; "in 2016, Plaintiff's parole release date was 2024," *id.* at 13, ¶ 29; on December 26, 2019, Jennifer Huss conspired with Robert Huss, Jacobson, and Carlson and illegally altered plaintiff's PED from 2024 to 2144, *id.* at 19, ¶ 52; law enforcement agreed plaintiff's PED was illegally altered, *id.*; and "Defendant[s] J. Huss and M. Carlson retaliated against Plaintiff for engaging in protected conduct, and for suing Carlson, J. Huss, and her husband, [Robert] Huss, and illegally, without notice or due process, altered Plaintiff's parole eligibility date from 2024 to 2144, adding 119 years to the PED, and even adding the years already served as if they had never been served."  *Id.* at 28.  None of these allegations explain what steps Jennifer Huss took to alter plaintiff's PED outside of conspiring with other defendants.  Even if Jennifer Huss shared a conspiratorial objective of altering plaintiff's parole date, there are no specific factual allegations supporting her personal participation in changing plaintiff's PED; plaintiff does not plead any allegations of Jennifer Huss' "'concerted action' taken 'to advance th[e] goal'" of the conspiracy.  *Bledsoe*, 53 F.4th at 609 (quoting *Janny v. Gamez*, 8 F.4th 883, 919 (10th Cir. 2021) (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1126 (10th Cir. 2000))).  The Court will grant defendants' motion and dismiss the portion of Claim One against Jennifer Huss that is predicated on altering plaintiff's

PED.

Claim Three alleges Jennifer Huss conspired to cause plaintiff's transfers between facilities.  Docket No. 1 at 30-32.  The allegations in Claim Three surrounding Jennifer Huss' actions causing plaintiff's transfer are not different from Claim One, except that plaintiff alleges that his transfers resulted in cruel and unusual punishment.  *Id.* at 31.  The Court will dismiss Claim Three against Jennifer Huss on the basis of qualified immunity for the same reasons as Claim One, namely, that none of the actions plaintiff alleges she took are connected to his transfers in 2020.

Claim Four alleges Jennifer Huss violated plaintiff's Eighth Amendment rights by causing him to be transferred to a housing unit with gang members plaintiff had informed on.  *Id.* at 32-33.  Plaintiff alleges a failure to prevent this transfer constituted deliberate indifference by exposing him to risk of harm.  *Id.* at 34.  In this claim, plaintiff alleges Jennifer Huss has "a duty owed to Plaintiff as [a] state law enforcement official[]" and that she "engaged in conduct that actually placed Plai[n]tiff in extreme danger just because Plaintiff has sued [her]" and that Jennifer Huss knew "Plaintiff's life was in danger" because he acted as an informant and was being transferred to a unit with gang members who swore to murder plaintiff.  *Id.* at 33-34.  Plaintiff identifies several defendants who were informed of plaintiff's transfers beginning in February 2020, but does not include Jennifer Huss in that group.  *Id.* at 24, ¶ 74.  His only allegation linking Jennifer Huss to his deliberate indifference claim is his claim that she caused his transfer.  *Id.* at 33-34.  For the reasons discussed above, plaintiff has not sufficiently alleged Jennifer Huss' personal participation in his transfer between facilities.  Because Claim Four alleges Jennifer Huss participated by causing plaintiff to be transferred, the

Court will dismiss Claim Four against Jennifer Huss based on a failure to allege her personal participation in the alleged constitutional violation.

Claim Six alleges that plaintiff was "exposed to infectious disease by CDOC agents" and that Jennifer Huss caused this exposure because it would not have happened but for plaintiff's transfer out of AVCF. *Id.* at 35. This claim will also be dismissed against Jennifer Huss based on plaintiff's failure to allege Jennifer Huss' participation in his transfer out of AVCF. As each individual claim is dismissed, the Court will grant the portion of defendants' motion seeking to dismiss Jennifer Huss.

### 7. Robert Huss

Plaintiff brings Claim Three for conspiracy with Eighth Amendment violations, Claim Four for deliberate indifference, and Claim Seven for violation of access to courts against Robert Huss. Docket No. 1 at 30-34, 35-37. The complaint alleges Robert Huss "[w]as acting as assistant A.G. when he violated Plaintiff's rights." *Id.* at 4. Plaintiff alleges Robert Huss made telephone calls and sent emails to prevent CDOC from accepting a settlement offer from plaintiff, *id.* at 17, ¶ 42; stated at a hearing that he withheld names, evidence, and information from the Court and plaintiff to prevent plaintiff from suing his wife Jennifer Huss, *id.*, ¶ 43; made phone calls that caused CDOC to refuse to transfer plaintiff to a lower-level facility or to correct his offender code, *id.*, ¶ 44; conspired in December 2019 to harm plaintiff for engaging in the protected conduct of refusing to drop cases, grievances, and criminal complaints by altering his parole eligibility date. *Id.* at 19, ¶ 52.

Claim Three, plaintiff's claim for conspiracy with Eighth Amendment violations, alleges that Jennifer Huss, Robert Huss, Daigle, Jacobson, and Dauffenbach discussed

a plan to transfer plaintiff away from AVCF to a facility where plaintiff's life would be in danger in order to stop plaintiff from receiving help in his prosecution of state actors, *id.* at 30-32;  discussed a plan to seize plaintiff's legal materials, threatened plaintiff's witnesses in other cases with termination from their CDOC jobs and a loss of their pension if they contacted plaintiff, ordered that plaintiff be transferred to a housing unit with gang members who defendants were aware wanted plaintiff dead, told CDOC and State of Colorado agents not to discuss the dangers inherent in transferring plaintiff and threatened to fire them if they helped plaintiff, and altered paperwork to attempt to transfer plaintiff to a facility plaintiff had previously been removed from due to risk of his death by gang members.  *Id.*  None of these allegations specify which of the Claim Three defendants took the alleged actions.  *See id.*

Defendants argue Robert Huss is entitled to qualified immunity and absolute immunity.  Docket No. 79 at 15-18.  Regarding plaintiff's conspiracy claim, none of the allegations involving Robert Huss allege he took any actions related to his work in a judicial proceeding.  Although defendants claim the AG Defendants are entitled to "full and absolute immunity from Plaintiff's claims," defendants' arguments regarding absolute immunity do not address any of the actions described in Claim Three and only explicitly cite Claims One and Seven.  *See id.* at 16-17.  Defendants fail to identify any actions taken by Robert Huss that would be subject to absolute immunity, and the Court will decline to grant defendants' motion on this basis.

Defendants also argue plaintiff fails to allege Robert Huss' personal participation in any constitutional violations.  *Id.* at 13.  Plaintiff's allegations that Robert Huss previously made phone calls threatening CDOC employees in order to prevent plaintiff's

transfer to a lower-level facility, Docket No. 1 at 17, ¶ 42, are not sufficient to allege that Robert Huss caused an alleged constitutional violation, namely, plaintiff's transfer to a different facility in February 2020.  Plaintiff does not allege that Robert Huss took any actions after altering plaintiff's PED.  Plaintiff does not allege Robert Huss was connected to Gillespie who is alleged to have seized plaintiff's legal materials, *id.* at 25, ¶ 76, or that Robert Huss is one of the persons who was identified as overriding the stop on plaintiff's transfer.  *Id.* at 20-21, ¶ 57.  There are no specific factual allegations supporting a continuing conspiracy that included plaintiff's transfer in February 2020. The Court will dismiss Claim Three, plaintiff's conspiracy claim, against Robert Huss based on a failure to allege his personal participation in plaintiff's transfers beginning in February 2020.

Claim Four alleges Robert Huss knew plaintiff acted as a confidential informant and caused him to be transferred to a housing unit endangering plaintiff.  *Id.* at 33.  Plaintiff does not allege that Robert Huss caused his transfer through his acts as a government attorney, and defendants do not identify any actions by Robert Huss that would be covered by absolute immunity.  *See* Docket No. 79 at 16-17.  The Court will decline to dismiss Claim Four against Robert Huss on the basis of absolute immunity.  The Court, however, will dismiss Claim Four based on a failure to allege Robert Huss' personal participation.  Plaintiff has not alleged that Robert Huss caused his transfer in February 2020 or that Robert Huss was among the defendants who were informed of his transfers in 2020.  Beyond alleging Robert Huss caused his transfers, Docket No. 1 at 33, plaintiff does not make any allegations linking Robert Huss to his deliberate indifference claim.

Claim Seven, for violation of access to courts, alleges Robert Huss submitted a pleading and affidavit he knew contained lies in a different case against plaintiff.  *Id.* at 36.  This is the same filing that the Court has ruled is covered by absolute immunity for defendants Weiser and Allen.  The complaint does not argue that Robert Huss took any additional actions or that the action he took was different than Weiser and Jacobson's actions.  *See id.* ("Weiser, Allen, R. Huss, and Jacobson lied to the Court.").  Robert Huss is entitled to absolute immunity for submitting a court filing.  Because that is the only action Robert Huss is alleged to have taken that applies to Claim Seven, the Court will dismiss Claim Seven as it applies to Robert Huss on the basis of absolute immunity.  As each individual claim is dismissed, the Court will grant the portion of defendants' motion seeking to dismiss Robert Huss.

The Court will dismiss all of plaintiff's claims against the AG Defendants on the basis of absolute immunity or qualified immunity for a failure to allege the defendant's personal participation, namely, Claims One, Four, and Seven against Woodward; Claims Four and Seven against Allen; Claims One, Four, and Seven against Weiser; Claims One, Three, Four, and Six against Jennifer Huss; and Claims Three, Four, and Seven against Robert Huss.

### C. Lauren Rivas

Defendant Rivas has not been served in this case.  The CDOC provided a last known address for Rivas to plaintiff, and the United States Marshals attempted service upon her, but this attempt was unsuccessful.  Docket No. 77 at 1-2.  The Court granted plaintiff additional time to find and properly serve Rivas, *id.* at 2, but plaintiff has not done so.  Therefore, the claims against Rivas will be dismissed without prejudice

pursuant to Fed. R. Civ. P. 4(m) ("If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.").

### D. Collateral Estoppel

In his complaint, plaintiff contends various of the defendants altered his PED by adding 119 years and failed to transfer him to lower-level security facilities.  Docket No. 1 at 28.  These issues have already been decided by two Colorado courts and plaintiff is precluded from bringing claims on that basis in this case.

Under the doctrine of issue preclusion, "when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970). "[I]ssue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Park Lake Res. Ltd. Liab. v. U.S. Dep't of Agr.*, 378 F.3d 1132, 1136 (10th Cir. 2004) (citation omitted).  The doctrine of issue preclusion is designed to prevent parties from wasting litigants' resources and adjudicators' time, and to discourage parties who lose to shop around for a different tribunal.  *See B & B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 140 (2015).

In general, issue preclusion applies when: (1) the issue previously decided is identical with the one presented in the action in question; (2) the prior action has been finally adjudicated on the merits; (3) the party against whom the doctrine is invoked was a party to, or in privity with a party to, the prior adjudication; and (4) the party against

whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.  *Park Lake*, 378 F.3d at 1136.

In *Vreeland v. Colorado Dept. of Corr.*, 2019CV31834 (El Paso County Dist. Ct. July 28, 2020), plaintiff argued (as he does here) that his PED had been altered to add 119 years.  The El Paso County District Court noted plaintiff's PED was originally calculated using the "governing sentence method," whereby the CDOC only considered the longest (governing) sentence.  Docket No. 79-1 at 5-6.  The court noted that in *Diehl v. Weiser*, 444 P.3d 313 (Colo. 2019) and *Exec. Dir. of Colo. Dept. of Corr. v. Fetzer*, 396 P.3d 1108 (Colo. 2017), the Colorado Supreme Court concluded such a calculation was erroneous and the CDOC was required to use the "one continuous sentence" rule and treat separate, consecutive sentences as one sentence.  Docket No. 79-1 at 5.  The court concluded that plaintiff's PED had not been miscalculated and further noted plaintiff was not yet eligible for transfers to lower-level prisons.  *Id.* at 5-6.  Similarly, in *Vreeland v. RSA, Inc.*, 2019CV85 (Jefferson County Dist. Ct. May 28, 2020), the Douglas County District Court concluded that, based on plaintiff's PED, he was not eligible for a lower-level transfer.  Docket No. 79-2 at 4.

The issues decided in these cases are identical to the issues plaintiff raises in the claims in this matter, to wit, whether his PED was erroneously altered and whether he was eligible for transfer to a lower-level security institution.  In his response, plaintiff argues that the Court may not take judicial notice of these orders without converting the present motion to one for summary judgment.  Docket No. 103 at 39.  That is not correct.  The Court may properly consider facts subject to judicial notice, state court pleadings, and matters of public record, which include these state court orders.  *Pace v.*

*Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008) (affirming the district court's conclusion it could "take judicial notice of all the materials in the state court's file.").

Here, there is no dispute plaintiff was a party to both state court actions and both are final determinations because plaintiff failed to timely appeal either of the relevant orders. Although plaintiff contends both cases are awaiting review on motions for reconsideration, Docket No. 103 at 39, the state court dockets in each case tell a different story.  In *Vreeland v. Colorado Dept. of Corr.*, plaintiff's motions for relief from judgment, to reconsider, and to enlarge time to file a notice of appeal were denied on June 29, 2021.  In *Vreeland v. RSA, Inc.*, plaintiff did not file any post-judgment motions. Plaintiff's conclusory assertion that the briefing on these motions was inadequate is not persuasive.  *See id.*  Consequently, the Court finds plaintiff is precluded from arguing either his PED was unlawfully altered or he was eligible to move to lower-level institutions.

### E. <u>First Amendment Retaliation (Claim One)</u>

Plaintiff's retaliation claim is comprised of five different subclaims of retaliatory conduct.  Docket No. 1 at 28-29.  The complaint alleges the following instances of retaliation: (1) plaintiff's transfer between seven prisons in seventy-two days, (2) the alteration of plaintiff's PED, (3) the seizure of plaintiff's legal materials, law books, case files, and tablet computer, (4) plaintiff's transfer to a level 5 maximum security prison, and (5) the theft and disclosure of plaintiff's medical, mental health, and institutional files.  *Id.*  Plaintiff's claim is brought against Jennifer Huss, Daigle, Jacobson, Dauffenbach, Carlson, Weiser, Woodward, Williams, Gillespie, and Rivas.[11]  *Id.* at 28-

---

[11] The Court will decline to discuss plaintiff's claims as they relate to Polis, Rivas, and

29.

"It is well-settled that prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his right of access to the courts." *Requena v. Roberts*, 893 F.3d 1195, 1211 (10th Cir. 2018) (citation omitted). The elements necessary for a retaliation claim where the governmental defendant is not the plaintiff's employer are: (1) the plaintiff was engaged in constitutionally protected activity; (2) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct. *See Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000). "[W]hen the plaintiff alleges that the defendant's action was taken in retaliation for protected speech, our standard for evaluating that chilling effect on speech is objective, rather than subjective . . . a trivial or de minimis injury will not support a retaliatory prosecution claim." *Eaton v. Meneley*, 379 F.3d 949, 954-55 (10th Cir. 2004) (internal quotation and citation omitted).

As an initial matter, because plaintiff is precluded from relitigating his claim that his PED was wrongfully changed, and that he was assigned the wrong security level, those actions fail to support his retaliation claim. Plaintiff argues that, for subclaim two, his change in sentence was illegal and without notice or due process, but does not argue that the change is an adverse action even if it was not an unlawful change. *See* Docket No. 103 at 40. The same is true of plaintiff's claim that he was given an improper

_____

the AG Defendants given its previous rulings, but will include discussion of the allegations that relate to them in the interest of completeness in describing plaintiff's claims as alleged against the remaining defendants.

security designation.  *See* Docket No. 1 at 28-29.  Subclaim four alleges defendants Williams, Jacobson, and Dauffenbach retaliated against plaintiff by causing him to be transferred from AVCF and incorrectly moved him to a maximum security prison.  *Id*. Outside of alleging plaintiff's security classification is incorrect, plaintiff's fourth subclaim does not allege any injuries, identify any protected conduct, or name any defendants that are not included in another subclaim, *see id.*, and so the Court will dismiss this subclaim.  Subclaim two and subclaim four challenging plaintiff's PED and security level will be dismissed as precluded.

### 1.  *Transfer of Facilities*

Plaintiff's first subclaim alleges that defendants Jennifer Huss, Daigle, Jacobson, and Dauffenbach retaliated against plaintiff for his filing of grievances, lawsuits, and complaints to law enforcement against Jennifer Huss, Jacobson, and Carlson by causing plaintiff to be transferred to seven facilities over the course of seventy-two days. *Id.* at 28.

The complaint alleges the following facts about plaintiff's transfers: that Daigle, Jacobson, Robert Huss, and Jennifer Huss knew that persons who wanted plaintiff dead for informing on them were housed at "Crowley, Limon, Sterling, Fremont, Buena Vista, and CSP," *id.* at 20, ¶ 54; in January 2020, an unidentified CDOC correctional officer at AVCF told plaintiff he needed to stop his lawsuits and complaints or he would end up dead soon, *id.*, ¶ 55; plaintiff reported this threat to Daigle's office, *id.*; on February 3, 2020, an unidentified person ordered plaintiff to pack his property for an impending transfer to a different facility, *id.*, ¶ 56; plaintiff called an investigator in Daigle's office who told plaintiff that his transfer would be stopped, but that he needed to comply with

orders, *id*.; plaintiff was told his move was cancelled thirty minutes later, *id*.; one hour later, an unidentified person told plaintiff that Daigle, Dauffenbach, and Jacobson had overridden the stop to plaintiff's transfer and ordered that plaintiff be sent to LCF, *id*. at 20-21, ¶ 57.  A series of transfers began that lasted three days and required plaintiff to stand outside in the snow for several hours until he ultimately arrived at LCF on February 5, 2020, *id*. at 21, ¶¶ 58-61; on February 6, 2020, an unnamed person told plaintiff he was being returned to AVCF for his safety, *id*. at 22, ¶ 64; plaintiff remained in segregation at LCF until February 19, 2020 when he was sent back to "DRDC," *id*., ¶ 65; on February 20, 2020, an unidentified person told plaintiff he was not going back to AVCF because someone at CDOC headquarters had altered plaintiff's transfer documents to send him to "FCF," *id*.; as plaintiff departed DRDC, an unidentified person informed plaintiff that the FCF administration would immediately transfer plaintiff to AVCF, *id*. at 24, ¶ 72; on the way to FCF, a "CDOC official of upper rank" told plaintiff that an inspector general investigator had discovered that someone was trying to harm plaintiff, *id*. at 22-23, ¶ 67; upon his arrival at FCF on February 20, 2020, plaintiff was told FCF was not aware of any safety issues and that plaintiff would be placed in the general population, *id*. at 24, ¶ 72; defendants Polis, Weiser, Williams, Daigle, Dauffenbach, Maynes-Cortez, and Moore were informed plaintiff had been transferred and was in danger, *id*. at 24-25, ¶ 74; these defendants "asserted they would make it right," but then took no action, *id*., ¶¶ 74-75; on April 13, 2020, plaintiff was sent to "CSP" where he remained until his complaint was filed.  *Id*. at 26-27, ¶¶ 80, 87.

There is no question that plaintiff's conduct of filing grievances and lawsuits is protected under the First Amendment.  *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir.

2010) (filing grievances is a constitutionally protected activity); *Green v. Johnson*, 977 F.2d 1383, 1389-91 (10th Cir. 1992) (inmate's allegation that guards destroyed his legal materials in retaliation for filing lawsuits and grievances stated a cognizable First Amendment claim).  A transfer can be considered an adverse action in regard to the second element of a retaliation claim.  *See Frazier v. DuBois*, 922 F.2d 560, 561-62 (10th Cir. 1990) ("While a prisoner enjoys no constitutional right to remain in a particular institution and generally is not entitled to due process protections prior to such a transfer, prison officials do not have the discretion to punish an inmate for exercising his first amendment rights by transferring him to a different institution." (quoting *Murphy v. Missouri Dept. of Correction*, 769 F.2d 502, 503 (8th Cir. 1985))).

Defendants argue that plaintiff fails to plausibly allege each defendant's connection to all of his transfers or to allege that each defendant acted with a retaliatory motive.[12] Docket No. 79 at 19-20.  Defendants argue that plaintiff only links Daigle, Dauffenbach, and Jacobson to one transfer to LCF on February 3, 2020.  *Id*.  Defendants also argue that plaintiff fails to allege defendants caused plaintiff's transfer.  *Id.* at 20.  Plaintiff responds that his complaint alleges that he was placed in transfer status, that his transfer was stopped, and that "defendants used their positions of authority to override the stop to the transfer," causing plaintiff to be moved to a prison where plaintiff was in danger.  Docket No. 103 at 29.

---

[12] Defendants do not specify whether they challenge plaintiff's allegations as unconnected to each defendant as a failure to allege facts sufficient for § 1983 liability under Fed. R. Civ. P. 12(b)(6) or as a qualified immunity personal participation defense to violation of a clearly established right.  *See* Docket No. 79 at 19-20.  The Tenth Circuit has opined that the two arguments "travel hand-in-hand, and when they do, we consider their substantive components together."  *Pahls*, 718 F.3d at 1227.

"Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). Claims brought under § 1983 require that "liability be predicated on a violation traceable to a defendant-official's 'own individual actions.'" *Pahls*, 718 F.3d at 1225 (quoting *Iqbal*, 556 U.S. at 676). "When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights 'were violated' will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that 'defendants' infringed his rights." *Id.* at 1225-26. The Court will evaluate Daigle, Dauffenbach, and Jacobson's alleged involvement in plaintiff's transfers.

Plaintiff alleges Daigle knew plaintiff would be in danger at LCF and that he was informed Daigle caused his transfer to LCF. Docket No. 1 at 20-21, ¶¶ 54, 57. Plaintiff, however, provides no allegations that Daigle acted with retaliatory intent. Plaintiff does not allege Daigle joined the group of defendants who sought to retaliate against plaintiff for his protected conduct. *See id.* at 19, ¶ 52. "[I]t is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice; plaintiffs must rather allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights." *Frazier*, 922 F.2d at 562 n.1. Because plaintiff does not allege that Daigle was motivated by plaintiff's protected conduct, plaintiff fails to state a retaliation claim against Daigle. Similarly, plaintiff does not make any allegations regarding Dauffenbach's intent. Plaintiff does not allege that Dauffenbach agreed to retaliate against plaintiff. Docket No. 1 at 19, ¶ 52. He only alleges that Dauffenbach knew plaintiff would be in danger at LCF and that he was told Dauffenbach caused his transfer. *Id.* at 20-21, ¶¶ 54, 57. Without any specific facts

evidencing retaliatory motive, plaintiff fails to state a claim against Dauffenbach.

Plaintiff alleges that Jacobson conspired to harm plaintiff and to prevent him from engaging in protected conduct because plaintiff refused to drop complaints, *id.* at 19, ¶ 52; that Jacobson knew plaintiff would be in danger at LCF, *id.* at 20, ¶ 54; and that Jacobson caused plaintiff's transfer to LCF.  *Id.* at 20-21, ¶ 57.  Unlike the other defendants identified in this claim, Jacobson is alleged to have caused the violation and to have had a retaliatory motive.  Defendants argue Jacobson is only linked to plaintiff's first transfer and not subsequent transfers or decisions, Docket No. 79 at 20, but do not explain why a single transfer would not be sufficient to state a claim.  Because plaintiff makes specific factual allegations on Jacobson's participation in subclaim one of his retaliation claim, the Court will decline to dismiss this subclaim against Jacobson.

### 2.  Illegal Seizure

In subclaim three,[13] plaintiff alleges that Williams, Jacobson, and Gillespie retaliated against plaintiff by seizing all his legal materials.  Docket No. 1 at 28.  Defendants argue that plaintiff fails to identify what actions each defendant except Gillespie took, and that plaintiff fails to allege how his speech was chilled by the seizure of his legal materials.  Docket No. 79 at 23-24.  Plaintiff responds that "[a]t minimum the claim asserts that Gillespie seized legal materials and [a] tablet," and Willliams and Jacobson lied to the Court.  Docket No. 103 at 36.  Temporal proximity between a challenged action and protected activity is not sufficient to allege a retaliatory motive.  *Leek v. Miller*, 698 F. App'x 922, 926 (10th Cir. 2017) (unpublished).  To establish the third element of a First

---

[13] As discussed above, Weiser and Woodward have been dismissed from Claim One.  This also dismisses the portion of plaintiff's subclaim that relates to filing false pleadings about the seizure of plaintiff's legal materials.

Amendment retaliation claim, a plaintiff must "establish that 'but for the retaliatory motive, the incidents to which he refers . . . would not have taken place.'" *Id.* (quoting *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

The complaint alleges that, on February 20, 2020, plaintiff discovered his legal materials had been seized "mostly by defendant Gillespie whom admitted he had turned on Plaintiff's tablet computer and searched the files thereon and reviewed the files for content," Docket No. 1 at 25, ¶ 76; Jacobson, among others, "asserted to the Court in pleadings and sworn affidavits that Plaintiff was basically lying and that he had access to law library and all of his legal materials," *id.*, ¶ 78; Williams, among others, lied to the Court stating that plaintiff's tablet was seized as a banned item and that he did not know where plaintiff's legal materials were, *id.* at 36; Willams responded to plaintiff's request for a protective order against retaliatory transfers and work orders with an affidavit supplied by "a CSP Associate Warden." *Id.* at 26, ¶ 86.

Regarding the seizure, plaintiff does not allege actions taken by any of the defendants except Gillespie. *See id.* at 25, ¶ 76. Gillespie seized plaintiff's belongings and admitted to turning on plaintiff's tablet and looking through plaintiff's files. *Id.* Plaintiff does not allege that Gillespie took plaintiff's belongings for a retaliatory purpose or that the seizure was in retaliation for any specific protected conduct. *See id.* at 25, 28, ¶ 76. Plaintiff does not identify whether his tablet was seized in retaliation for filing cases or grievances. *Id.* at 28. Plaintiff fails to link a specific act of protected conduct, or several acts of protected conduct, with the seizure of his tablet. Additionally, plaintiff fails to state what actions any defendant other than Gillespie took to seize his tablet and review his legal materials. Without a link between protected conduct and the

challenged action, plaintiff cannot establish a retaliatory motive.

Regarding the court filings, plaintiff claims that, when he challenged the seizure of his tablet, defendants provided false testimony in court.  *Id.* at 28.  Plaintiff states that the statements were made in response to a court order, but does not allege which defendants said what, alleging only that Weiser, Woodward, Maynes-Cortez, and Jacobson "asserted to the court in pleadings and sworn affidavits that Plaintiff was basically lying and that he had access to [the] law library and all of his legal materials." *Id.* at 25, ¶ 78.  Plaintiff does not allege that Gillespie testified as to anything and fails to specify what Willams and Jacobson testified to.  At one point plaintiff states Williams participated in supplying a specific affidavit, but that affidavit did not relate to the seizure of plaintiff's materials.  *See id.* at 26, ¶ 86.  Plaintiff fails to establish a retaliatory motive because there is no link between defendants' actions and any protected conduct that plausibly alleges retaliation.  Plaintiff's claim for retaliation based on the seizure of his legal materials and provision of false testimony fails to plausibly allege specific protected conduct and individual actions by the defendants in retaliation for plaintiff's conduct.  Because he has not plausibly alleged that his protected speech was the "but for" cause of any challenged incident, the Court will grant defendants' motion and dismiss plaintiffs' third subclaim.

### 3. *Plaintiff's Files*

Finally, in subclaim five, plaintiff alleges that Carlson and Rivas stole files from plaintiff and agreed to testify against him as retaliation for filing a lawsuit against either defendant Carlson or Rivas.  *See id.* at 29.  Plaintiff does not allege what case either defendant decided to testify in or what case plaintiff filed against either.  *Id.*  Plaintiff

states that Carlson and Rivas stole medical files, mental health files, and institutional files without explaining which files each defendant took or when they were taken. *Id.* In his next claim, plaintiff alleges that defendant Rivas stole his medical files and that defendant Carlson stole records on plaintiff's time computation and criminal sentencing. *Id.* at 29-30. He does not differentiate between Rivas and Carlson or allege individual action on Carlson's part in his retaliation claim. *Id.* at 28. Plaintiff has failed to establish what protected conduct Carlson was retaliating against as plaintiff does not identify any lawsuit or even who he was suing in a lawsuit. *Id.* As plaintiff has not plausibly alleged retaliation for specific conduct with supporting factual allegations, this subclaim fails. Based on the discussion above, the Court will dismiss Claim One, except the portion of plaintiff's first subclaim that is brought against Jacobson.

### F. Fourth Amendment (Claim Two)

In plaintiff's second claim, plaintiff contends Mary Carlson[14] used her position as a CDOC employee to "steal . . . copies of Plaintiff['s] time computation and [allegedly sealed] criminal sentencing information," and to provide it to Lauren Rivas and a private company in violation of the Fourth Amendment. *Id.* at 30. Plaintiff, however, lacks any "reasonable expectation of privacy" in public records and court documents. *Daniels v. Arapahoe Cnty. Dist. Ct.*, 376 F. App'x 851, 855 (10th Cir. 2010) (unpublished) (citing *Rodgers v. Hyatt*, 697 F.2d 899, 903 (10th Cir. 1983)). Plaintiff argues that he still has a privacy expectation because the records were sealed. Docket No. 103 at 42. Plaintiff, however, provides no cases or argument in support of his claim that he has a

---

[14] Plaintiff's second claim is also brought against Rivas, who has been dismissed for the reasons stated above.

cognizable interest in court records.  In his response, plaintiff attempts to augment the allegations in his claim by adding additional allegations regarding the files Carlson allegedly stole and why they are entitled to privacy.  *See id.* at 40-42.  He may not do so in his response.  *See In re Qwest Commc'ns Int'l, Inc.*, 396 F. Supp. 2d 1178, 1203 (D. Colo. 2004) ("The plaintiffs may not effectively amend their Complaint by alleging new facts in their response to a motion to dismiss.").  Having evaluated only the allegations in plaintiff's complaint (Carlson took sentencing and time computation information), the Court concludes plaintiff has failed to allege a cognizable claim under the Fourth Amendment and will dismiss Claim Two.

### G. <u>Conspiracy (Claim Three)</u>

In Claim Three, plaintiff contends that Daigle, Jacobson, and Dauffenbach[15] conspired to transfer plaintiff away from AVCF to hinder his ability to pursue his litigation and to place him at facilities with inmates who wished him harm.[16]  Docket No. 1 at 30-32.

To state a valid claim for conspiracy under § 1983, plaintiff "must allege specific facts showing an agreement and concerted action among the defendants."  *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998); s*ee also Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1231 (10th Cir. 1990) (a plaintiff must establish "by direct or circumstantial evidence, a meeting of minds or agreement among the defendants").  In addition, plaintiff must show that the conspiracy's goal was to deprive

---

[15] Plaintiff also asserts this claim against Jennifer and Robert Huss, who the Court has already dismissed.

[16] This claim also makes allegations regarding alleged Eighth Amendment violations, which are addressed in Section III.H.

him of a right secured by the Constitution.  *See, e.g.*, *Dixon v. City of Lawton*, 898 F.2d 1443, 1449 (10th Cir. 1990) ("to recover under a § 1983 conspiracy theory, a plaintiff must plead and prove not only a conspiracy, but also an actual deprivation of rights"). Moreover, "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."  *Tonkovich*, 159 F.3d at 533.  Consequently, to establish a prima facie conspiracy claim under § 1983, plaintiff must allege facts that demonstrate: (1) an agreement to deprive plaintiff of a constitutional or statutory right; (2) concerted action by movants; and (3) an actual deprivation of rights.  *Dixon*, 898 F.2d at 1449.

Plaintiff has not satisfied this bar with respect to the first element of a conspiracy claim because he has not alleged specific facts that suggest there was an agreement between any of these defendants to deprive plaintiff of his rights, and the Court cannot assume plaintiff can prove facts that have not been alleged.  *See, e.g.*, *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (ruling that courts may not "supply additional factual allegations to round out a plaintiff's complaint").  Rather, plaintiff alleges that "[t]hese Defendants designed a scheme to transfer Plaintiff away from AVCF, and to a facility where Plaintiff's life would be in danger," and to impede his litigation.  Docket No. 1 at 31.  The only alleged detail regarding the formation of this plan is that it took place "by telephone and [] email accounts."  *Id.* at 30.  But without more details (i.e., dates, times, parties to the conversations, what was said) these allegations are conclusory and do not establish a meeting of the minds between these defendants.  In addition, much like his other claims, plaintiff names the defendants individually, but the remaining allegations are pled collectively without any particulars to allow each defendant reasonable notice of what he or she is accused of doing.  *See id.*

at 30-32; *Pahls*, 718 F.3d at 1225-26 ("When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights 'were violated' will not suffice.").

Additionally, plaintiff fails to allege the third element of a conspiracy claim, namely, an actual deprivation of rights.  Plaintiff alleges that defendants designed a scheme to prevent plaintiff's lawsuits and criminal prosecutions, but alleges the constitutional deprivation he faced was an Eighth Amendment violation because he was placed in extreme danger.  Docket No. 1 at 30-32.  Plaintiff does not allege that defendants agreed to deprive plaintiff of his Eighth Amendment rights, as opposed to agreeing to prevent plaintiff from pursuing civil actions and criminal prosecutions, *see id.*, and does not explain why his claim constitutes an actual deprivation of his rights based on defendants' agreement where the harm he faced is distinct from the harm defendants agreed to cause.  *See* Docket No. 103 at 42-47.  Based on plaintiff's failure to allege an agreement between defendants resulting in an actual deprivation of rights, the Court will dismiss Claim Three.

### H. Eighth Amendment (Claims Four, Six, Eight)

Plaintiff asserts three claims pursuant to the Eighth Amendment.  Docket No. 1 at 32-34, 35, 37-38.  He contends, in Claim Four, that Williams, Daigle, Kirby, Jacobson, and Dauffenbach knew plaintiff worked as a confidential informant and failed to protect him when they allowed or caused him to be transferred to a prison where individuals he informed against were living.  *Id.* at 33-34.  In Claim Six, plaintiff contends that Williams, Daigle, Jacobson, and Dauffenbach were deliberately indifferent to a serious medical need when they "caused Plaintiff to be exposed to COVID-19 at [Colorado State

Penitentiary]."[17]   *Id*. at 35.   In Claim Eight, plaintiff alleges that Moore failed to protect plaintiff when he issued a state document asserting plaintiff had no known safety issues at any CDOC prison and he could be moved to any of them.  *Id*. at 37-38.

"The Eighth Amendment's prohibition of cruel and unusual punishment imposes a duty on prison officials to provide humane conditions of confinement, including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from bodily harm."  *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008) (citation omitted). And it prohibits "unnecessary and wanton infliction of pain," including "deliberate indifference to serious medical needs of prisoners."  *Estelle v. Gamble,* 429 U.S. 97, 104 (1976) (citation omitted).  Prison officials violate the Eighth Amendment "only if the deprivation to which the prisoner has been subjected is 'objectively sufficiently serious' and only if the prison official has a 'sufficiently culpable state of mind.'"  *Grissom v. Roberts*, 902 F.3d 1162, 1174 (10th Cir. 2018) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

### 1. Failure to Protect

The duties under the Eighth Amendment include a duty "to protect prisoners from violence at the hands of other prisoners."  *Farmer*, 511 U.S. at 833.  "[T]o establish a cognizable Eighth Amendment claim for failure to protect, a plaintiff 'must show that he is incarcerated under conditions posing a substantial risk of serious harm,' the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component."  *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001)

---

[17] AG Defendants are also named in this claim, but have been dismissed for the reasons stated above.

(quoting *Farmer*, 511 U.S. at 834)).

Claim Four alleges plaintiff acted as an informant for law enforcement and "was guaranteed safety via housing at a specific facility in a specific unit and room," Docket No. 1 at 32; any prisoner, prison official, or law enforcement official would realize it is dangerous to act as an informant, *id.*; and plaintiff was subjected to Eighth Amendment violations when "Plaintiff; whom has 2 points, is a true minimum security level prisoner, and whom was an active confidential informant [was] transferred to a max security Level 4 and 5 prison and to be placed in the same housing unit as the very gang members whom sworn to murder Plaintiff as Plaintiff informed on the gang members in order to save the life of a female CDOC employee at AVCF." *Id.* at 33.

Although Claim Four does not itself explain which transfers plaintiff alleges placed him in danger based on his work as an informant, the complaint generally identifies two such transfers. First, plaintiff alleges that on February 5, 2020 plaintiff was transferred to LCF and "LCF staff attempted to place Plaintiff into the same cell as the gang members Plaintiff had informed on and whom asserted they wanted Plaintiff dead," but plaintiff was immediately placed in a single room in segregation instead. *Id.* at 21, ¶¶ 60-61. Second, plaintiff alleges that, on February 20, 2020, plaintiff was transferred to FCF, a "facility wherein law enforcement had specifically lied to a gang member and stated Plaintiff had informed [law enforcement that] the gang member J.L. was planning a hit on a district attorney, and then allowed J.L. to go back to the yard and tell the entire prison population this Plaintiff was a rat and informant." *Id.* at 22, ¶ 65.

Plaintiff's allegations identifying the prisoners who wanted to murder him at LCF and FCF, however, are cursory. There are no allegations specifying who these other

incarcerated individuals are, even by initials, what specific threats they have made against plaintiff, or whether they have caused harm to other individuals.  Plaintiff alleges he identified participants in a murder at AVCF in 2016 as part of his work as an informant and that some of those persons were transferred to LCF, *id.* at 14-15, ¶ 36, but he does not indicate how many people went to LCF, that the persons transferred knew plaintiff informed on them, or any allegations specifying when these unidentified persons swore to kill plaintiff.  *See id.* at 14-16, ¶¶ 34-37.  At FCF, plaintiff alleges that in 2016 another inmate, J.L., was permitted to tell the entire prison population plaintiff was informant, *id.* at 10, 22, ¶¶ 14, 65, but does not explain who of the entire population in 2016 remained at FCF and wished to kill plaintiff in 2020 or when such people threatened plaintiff.  *See id.* at 22-23, ¶¶ 65-69.  Plaintiff details many occasions where he informed on other persons, *see*, *e.g.*, at 10, 22, 24, but none of plaintiff's allegations are linked to his claim in this case with any level of specificity.  He does not identify any inmates that threatened him at any time, alleging only that it is dangerous to act as an informant.  *See id.* at 32.  "Being subjected to the mere possibility of assault from another inmate does not satisfy the objective component of an Eighth Amendment violation."  *Williams v. Daniels*, No. 14-cv-00705-CBS, 2014 WL 5152359, at *3 (D. Colo. Oct. 14, 2014); *see, e.g.*, *Grimsley v. MacKay*, 93 F.3d 676, 681 (10th Cir. 1996) (observing that inmate may demonstrate the existence of a substantial risk of serious harm "where prison officials disregard repeated warnings of danger to a particular prisoner and continually refuse to make the situation safer, for example by . . . separating the prisoner from other inmates who previously have attacked him on multiple occasions"); *Harris v. Matthews*, 417 F. App'x 758, 763 (10th Cir. 2011)

(unpublished) ("an idle threat of impending physical harm that is not carried out will not suffice to state an Eighth Amendment claim"). Without more detail, plaintiff's allegations do not adequately support the existence of a specific threat to his safety posed by another inmate. Consequently, the Court will dismiss Claim Four.

Claim Eight alleges that defendant Moore "was directed to address grievances and the safety of Plaintiff," that Moore disregarded plaintiff's safety, and that Moore "knew or should have known that transferring Plaintiff to Limon, or Sterling, or Fremont, or Buena Vista, or Crowley, would subject Plaintiff to significant risk of physical harm or to death as a result of acting as informant." Docket No. 1 at 37-38. Because this claim is based on the same threat as Claim Four, namely, danger posed by other inmates to plaintiff based on his work as an informant, plaintiff also fails to allege a sufficiently specific threat for Claim Eight, and the Court will dismiss plaintiff's second failure to protect claim.

### 2. Deliberate Indifference to a Serious Medical Need

Like other claims under the Eighth Amendment, a claim for deliberate indifference involves both an objective and a subjective component. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005). Under the objective component, the prisoner must "produce objective evidence that the deprivation at issue was in fact 'sufficiently serious.'" *Id.* (quoting *Farmer*, 511 U.S. at 834). Under the subjective component, the prisoner must show the defendant had a state of mind "akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (quoting *Farmer*, 511 U.S. at 837) (internal quotations and citation omitted). Pursuant to this standard, "the official

48

must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837.

In Claim Six, plaintiff alleges that, upon his transfer to the Colorado State Penitentiary on April 13, 2020, he was "infected with COVID-19, denied testing and care, allowed to suffer, and has suffered actual permanent neurological injury." Docket No. 1 at 27, ¶¶ 87, 89. He contends that Williams, Daigle, Jacobson, and Dauffenbach "caused Plaintiff to be exposed" because they allowed or caused him to be transferred between prisons. *Id.* at 35. This is the extent of plaintiff's allegations to support this claim and is little more than a legal conclusion masquerading as a fact. Plaintiff has made no attempt to allege how these defendants were aware of the risk and then disregarded it. *See id.* This is fatal to plaintiff's deliberate indifference claim. *See Farmer*, 511 U.S. at 837 ("a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety"). The Court will dismiss Claim Six.

## I. Equal Protection (Claim Five)

Plaintiff contends that defendants Daigle and Kirby failed to protect him as required by Colo. Rev. Stat. § 17-1-103.8, which obligates the Inspector General to investigate, detect, and prevent crimes within or outside of the prisons. Colo. Rev. Stat. § 17-1-103.8(2)(a). He argues their failure to do so was in violation of his right to equal protection under the laws. Docket No. 1 at 34-35.

As an initial matter, § 17-1-103.8 does not create a private cause of action.

*Rozenberg v. Knight*, No. 12-cv-00431-WJM-CBS, 2012 WL 7827998, at *1 n.1 (D. Colo. Nov. 19, 2012) ("Even if Defendants violated Colo. Rev. Stats. Title 16 or 17, there is nothing to suggest that these statutes were intended to provide [the plaintiff] a private claim for relief."), *report and recommendation adopted*, No. 12-cv-0431-WJM, 2013 WL 1320779, (D. Colo. Mar. 29, 2013), *aff'd*, 542 F. App'x 711 (10th Cir. 2013) (unpublished).  Furthermore, to the extent an equal protection claim could be asserted based on defendants' failure to investigate, plaintiff has not properly alleged an essential element of an equal protection violation, namely, differential treatment compared to similarly situated individuals.

The Equal Protection Clause requires that no state "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV.  A class-of-one equal protection claim requires a plaintiff to allege he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  Plaintiff must establish that he is "similarly situated in every material respect" to the other individuals.  *Rocha v. Zavaras*, 443 F. App'x 316, 319 (10th Cir. Sept. 26, 2011) (unpublished) (quoting *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1216 (10th Cir. 2011)).  Plaintiff must also show the difference in treatment was "irrational and abusive" and "wholly unrelated to any legitimate state activity."  *Kansas Penn Gaming*, 656 F.3d at 1216 (citation omitted); *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1257 (10th Cir. 1998) ("The allegation that a plaintiff was treated differently from those similarly situated is an essential element of an equal protection action.").

Plaintiff alleges "[p]risoners report crimes to the Inspector General's Office almost

daily, [and] the reports are transmitted to law enforcement as required."  Docket No. 1 at 35.  Plaintiff alleges that, when he reports crimes, they are never sent to law enforcement.  *Id.*  These bare allegations do not satisfy plaintiff's burden to establish he was treated differently from similarly situated individuals.  Instead, the only detail the Court is given is that these other individuals were also incarcerated.  *See id.*  To be sure, plaintiff has not even stated these other individuals are in fact similar.  *See id.*  Because plaintiff offers only a formulaic argument that "[he] has the same right to report crimes and to seek justice as do any other prisoner," *id.*, the Court concludes he has failed to allege a viable equal protection claim.  *Kansas Penn Gaming*, 656 F.3d at 1220 (insufficient to simply allege that the comparators are in a "comparable" or "similar" situation — "the claim must be supported by specific facts plausibly suggesting [the comparators] are similar in all material respects").  The Court will dismiss Claim Five because plaintiff has not demonstrated a private right of action is supported and because plaintiff has failed to allege a plausible equal protection claim.

### J. <u>Access to Courts (Claim Seven)</u>

In Claim Seven, plaintiff brings four subclaims alleging defendants took various actions to impede him in litigating his cases and argues that, were it not for these defendants, he would have been successful in his myriad litigation efforts.  Docket No. 1 at 35-37.  The complaint alleges the following instances of a violation of plaintiff's access to courts: (1) Weiser, Woodward, Allen, Jacobson, and Maynes-Cortez have engaged in a pattern of lying to the Court to prevent merit-based resolution of plaintiff's claims, (2) Weiser, Woodward, Williams, and Jacobson lied to the Court in response to a request for injunctive relief, (3) Weiser, Woodward, and Jacobson lied to the Court

about the reasons behind plaintiff's transfer from AVCF, and (4) Williams and Gillespie seized plaintiff's legal materials, law books, case files, and tablet computer.[18]  *Id.* at 36-37.

It is well-established that prisoners have a constitutional right of access to the courts. *See Bounds v. Smith*, 430 U.S. 817, 828 (1977); *Love v. Summit County*, 776 F.2d 908, 912 (10th Cir. 1985).  Plaintiffs must allege specific facts that demonstrate an actual injury in an ability to pursue a nonfrivolous legal claim or the defense of a criminal case. *See Lewis v. Casey*, 518 U.S. 343, 349-55 (1996); *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996) (per curiam).  An access-to-courts claim may involve either a prison's affirmative duty to assist prisoners in the preparation of initial legal papers or conduct that unduly hinders litigation at any stage of the proceedings.  *See Vreeland v. Schwartz*, 613 F. App' x 679, 683 (10th Cir. 2015) (unpublished).  Regardless of the type of claim being asserted, the underlying cause of action that allegedly was lost is an element of such a claim that must "be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002).

In plaintiff's first subclaim, he alleges that certain AG Defendants, "Jacobson, and Maynes-Cortez have violated Plaintiff's access to courts and have frustrated, impeded, [and] hindered valid claims by engaging in a pattern of lying to the Court in sworn affidavits, pleadings, and testimony designed to prevent fair merit based resolution of claims, and to cover-up misconduct of defendants and state agents."  Docket No. 1 at

---

[18] Having dismissed that AG Defendants, the Court will only discuss plaintiff's subclaims as they relate to the remaining defendants, namely, Jacobson, Maynes-Cortez, Willams, and Gillespie.

36.  Plaintiff does not identify what "affidavits, pleadings, and testimony" this subclaim refers to, what claims were impeded or how they were impeded, and fails to link court filings to misconduct he alleges was being concealed.  Without allegations of fact supporting plaintiff's vague allegation, the complaint cannot be said to give fair notice to defendants, nor can the Court apply the nonfrivolous test to plaintiff's first subclaim. *See Harbury*, 536 U.S. at 416; *see also McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001) (an actual injury was not sufficiently alleged because, among other reasons, the plaintiff "did not explain that his legal claim was nonfrivolous").

Additionally, plaintiff does not identify any specific actions Maynes-Cortez took.  The only claim against Maynes-Cortez is subclaim one in Claim Seven.  Docket No. 1 at 36. The complaint alleges Maynes-Cortez was informed of the facts constituting some of the allegations in this complaint in February 2020, *id.* at 24-25, ¶ 74; that she, among other defendants, acknowledged what she had been told and promised to make it right, *id.*; when the court ordered Weiser to respond to plaintiff's request for a stay in another case, "Weiser, Woodward, Jacobson[,] and Maynes-Cortez asserted to the court in pleadings and sworn affidavits that Plaintiff was basically lying and that he had access to law library and all of his legal materials," *id.* at 25, ¶ 78; and because of the submitted lies, plaintiff had to submit pleadings without files he needed and "valid claims were impeded and dismissed."  *Id.*, ¶ 79.  Plaintiff does not allege any specific action Maynes-Cortez took at any time, identify what she submitted to the court with lies, or explain what lies she specifically told the court.  Without allegations of fact supporting plaintiff's vague allegation that Maynes-Cortez lied, even if subclaim one stated a claim, plaintiff has not linked Maynes-Cortez to that subclaim and plaintiff's claim against her

fails.

In subclaim two, plaintiff alleges "Defendants Weiser, Woodward, Williams, and Jacobson lied to the Court in *Vreeland v. Vigil*, supra, and in response to a rule 65 request for relief to have all legal materials and tablet computer returned, these Defendants lied to the Court, knowingly, and asserted the tablet was seized as it was a[] banned item that no prisoner possessed and that Plaintiff had managed to hide his from CDOC staff for six years; also asserting they knew not where Plaintiff's law books and legal case files were located even though they were told where the materials were by CDOC staff prior to a he[a]ring on 7/14/2020." *Id.* at 36.  After dismissing the AG Defendants, plaintiff's subclaim remains against defendants Williams and Jacobson.

Plaintiff does not identify what submissions he references and the allegations in the complaint do not provide clarity.  Regarding Williams, the complaint alleges that, at some point after April 14, 2020, plaintiff "filed a motion to the court seeking protective orders as to retaliatory transfers and orders to complete physical labor Plaintiff was incapable of completing" and "Defendant Weiser, Woodward, Williams, and Jacobson responded to the requested order by telling the court, with sworn affidavit supplied by a CSP Associate Warden, that (i) Plaintiff never worked on the date he claims he was injured; (ii) Plaintiff never sent in any request for medical care; and (iii) the requested relief was already granted." *Id.* at 26, ¶¶ 83-86.  Regarding Jacobson, the complaint alleges that she, among others, responded to court orders after February 20, 2020, stating plaintiff was lying about access to his legal materials and that she, among others, responded to a Court order with an affidavit supplied by an Associate Warden about plaintiff's injuries and medical care containing lies.  *Id.* at 25-26, ¶¶ 78, 86.

Subclaim two potentially addresses the representations in 2020 about plaintiff's access to legal materials, but plaintiff does not relate Williams to those filings and does not identify how and in what capacity Jacobson participated in those filings.  Plaintiff mentions a specific case, *Vreeland v. Vigil*, but does not link defendants' actions to non-frivolous claims in that case.  It is not possible to examine whether plaintiff identifies an actual injury in a non-frivolous claim because plaintiff does not identify which of his claims subclaim two addresses.  The Court will dismiss subclaim two as impermissibly vague.

Subclaim three alleges "Weiser, Woodward, and Jacobson lied to the court and asserted a transfer from AVCF to a max security prison took place because Plaintiff had been there longer than policy allows and that was a security threat, these [defendants] knew this was a lie when they asserted it."  *Id.* at 36.  Plaintiff alleges that, in order to oppose a request for plaintiff to be transferred to a lower-level facility, Jacobson provided an affidavit containing lies.  *Id.* at 17-18, ¶¶ 47-48.  Here, plaintiff's claimed injury is the impediment of him being transferred to a lower-level facility.  For the reasons discussed above, plaintiff is precluded from making an argument about any transfer to a lower-level facility, and the Court will dismiss subclaim three.

In addition, plaintiff's allegations on subclaims one, two, and three do not establish an actual injury.  Plaintiff alleges that, "[b]ut for the lie, Plaintiff would have received the relief he sought on his valid claims."  *Id.* at 36.  However, without allegations of fact supporting these vaguely alleged claims, the complaint cannot be said to give fair notice to defendants, nor can the Court apply the nonfrivolous test.  *Harbury*, 536 U.S. at 416; *see also McBride*, 240 F.3d at 1290 (an actual injury was not sufficiently alleged

55

because, among other reasons, the plaintiff "did not explain that his legal claim was nonfrivolous").

In subclaim four, plaintiff alleges Williams and Gillespie violated plaintiff's access to courts when they seized his legal materials, books, files, and computer.  Docket No. 1 at 37.  He contends that, without these materials, he has been unable to continue any of his litigation.  *Id.*  A claim for access to courts can be backward-looking "to a time when specific litigation ended poorly, or could have commenced, or could have produced a remedy subsequently unobtainable" or forward-looking "claims that systemic official action frustrates a plaintiff . . . in preparing and filing suits at the present time."  *Harbury*, 536 U.S. at 413, 414.  Plaintiff does not allege that the seizure of his materials created a result that is no longer attainable and alleges instead that he "has zero ability to litigate" his current cases.  Docket No. 1 at 37.  This raises a forward-looking claim.  Defendants argue this claim is moot as plaintiff has all his materials back and has stated he can litigate his case.  Docket No 79 at 41.  Plaintiff has affirmed that he can litigate this case as well as *Vreeland v. Tiona* 17-cv-01580-PAB-SKC, *Vreeland v. Vigil*, 18-cv-03165-PAB-SKC, and *Vreeland v. Huss*, 18-cv-00303-PAB-SKC.  Docket No. 142 at 1.  As "the essence of the access claim is that official action is presently denying an opportunity to litigate," *Harbury*, 536 U.S. at 413, plaintiff's present ability to litigate his cases makes this claim moot.[19]  Having dismissed each subclaim, the Court will dismiss Claim Seven in its entirety.

---

[19] To the extent plaintiff claims his ability to litigate state court cases is impeded, Docket No. 1 at 37, plaintiff provides no details on the cases to allege that these cases are nonfrivolous.

### K. **Breach of Contract (Claim Nine)**

Claim Nine, plaintiff's claim for breach of contract, alleges "Defendant Kirby and Inspector General's Office entered into a contract with Plaintiff and agreed to allow Plaintiff to remain at AVCF, . . . until release or lower level facility transfer," and to allow plaintiff to keep his tablet in exchange for plaintiff acting as an informant.  Docket No. 1 at 38.  Plaintiff alleges this contract was breached when plaintiff was transferred and his tablet was seized.  *Id.*

To state a claim for breach of contract under Colorado law,[20] a plaintiff must sufficiently plead the following elements: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff.  *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992).  Defendants argue plaintiff fails to allege the first and fourth elements of a breach of contract claim.  Docket No. 79 at 43-45.

First, defendants argue plaintiff fails to allege Kirby had the capacity to enter contracts on behalf of the CDOC or the State of Colorado, that the terms of the contract are vague, and the Court can not infer mutual assent on the subject matter of the agreement.  *Id.* at 43-44.  Plaintiff responds that the complaint alleges that Kirby entered into the contract on behalf of the Inspector General's Office and, if he did not have the authority to do so, discovery will reveal that matter and plaintiff has still stated

---

[20] The parties appear to agree that Colorado law applies to the breach of contract claim in this case.  The Court will operate under the same premise.  *Cf. Grynberg v. Total S.A.*, 538 F.3d 1336, 1346 (10th Cir. 2008) ("Because the parties' arguments assume that Colorado law applies, we will proceed under the same assumption.").

a claim.  Docket No. 103 at 56.  Additionally, plaintiff argues that the agreement is not too vague to specify the terms of the parties' agreement.  *Id.* at 56-57.  "Whether a contract exists is a question of fact to be determined in light of all the surrounding circumstances."  *Yaekle v. Andrews*, 195 P.3d 1101, 1111 (Colo. 2008).  The Court is not persuaded at this stage that plaintiff fails to allege sufficient facts in support a claim for breach of contract.  The complaint alleges plaintiff spoke with Kirby in June 2016 twice and entered an agreement, Docket No. 1 at 11-16, ¶¶ 19-21, 26-37; plaintiff was to work as a confidential informant and, in exchange, plaintiff was allowed to choose his room at AVCF and to remain in that room and keep his tablet.  *Id.*  Plaintiff alleges Kirby returned plaintiff's tablet and plaintiff was in the room he selected.  *Id.* at 13-14, ¶¶ 32-33, 35.  To the extent defendants argue Kirby did not have authority to enter into an agreement, Kirby's ability to deliver on his promises at the beginning of the parties' agreement is sufficient to allege he had authority to make the contract.  Additionally, defendants argue that the terms of the contract are vague because plaintiff "generally alleges he would get his tablet back and be allowed to stay in certain housing in exchange for acting as a confidential informant for the State," Docket No. 79 at 44, but plaintiff alleges a specific room he was to stay in for a specific amount of time and alleges that his tablet was returned when he spoke to Kirby.  Docket No. 1 at 12-16, ¶¶ 26-37.  Plaintiff identifies specific factual details.  The Court will decline to dismiss Claim Nine.

Next, defendants argue plaintiff fails to allege he was damaged by the breach of contract because he "was never subject to violence from the inmates against whom he acted as a confidential informant" and any other claims of injury are de minimis.

Docket No. 79 at 45.  Plaintiff alleges that his injuries in Claim Nine are based on being transferred seven times in seventy-two days and that his legal materials and tablet were wrongfully seized.  *See* Docket No. 1 at 38.  Even if, as discussed above, the alleged threats from other inmates do not rise to a constitutional level of injury for a claim of deliberate indifference, defendants do not explain why the inconvenience of transferring seven times is insufficient to state a claim for breach of contract. Defendants' assertion that plaintiff's injuries are de minimis is unsupported by any legal authority.  Because defendants fail to identify any element of plaintiff's claim that is not pled sufficiently, the Court will decline to dismiss Claim Nine.

## IV. CONCLUSION

### A. <u>Amendment and Discovery</u>

Plaintiff requests, if the Court finds any portion of plaintiff's claims should be dismissed, that the Court "point out what part is insufficient and to then allow Plaintiff the ability to amend."  Docket No. 103 at 57.  Additionally, plaintiff states a "court may defer ruling on a Rule 12(b)(6) motion to allow discovery to support the plaintiff's pleadings" and states trial courts should "defer ruling on the motion and give the plaintiff an opportunity to take limited discovery narrowly targeted at obtaining the information needed to satisfy Rule 8(a)(2)."  *Id.* at 7.  Plaintiff requests that the Court allow plaintiff to conduct discovery before dismissing any claims.  *Id.* at 57-58.

First, the Court will deny plaintiff's request for discovery before the Court rules on the motions to dismiss.  Plaintiff provides no binding authority from the Tenth Circuit on that subject.  Moreover, far from requesting narrowly targeted discovery, plaintiff's request for discovery has no limitations in scope and does not suggest what information plaintiff

could discover in support of his claims.  Next, the Court will deny plaintiff's request to amend the complaint.  Plaintiff did not choose to amend his complaint as of right in response to defendants' motion to dismiss or file a separate motion to amend his complaint.  *See* Fed. R. Civ. P. 15(a)(1)(A) ("A party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b).")  The Local Rules state that a "motion shall not be included in a response or reply to the original motion.  A motion shall be filed as a separate document."  D.C.COLO.LCivR 7.1(d).  Plaintiff did not file an amended complaint in compliance with the Local Rules. See D.C.COLOLCivR 15.1  Without any specific argument as to why plaintiff should be allowed to amend his complaint without following the normal procedures for doing so, the Court will not grant him leave to freely amend his complaint based on one paragraph at the end of his opposition to defendants' motion.

### B. Prejudice

Neither party discusses which claims, if any, should be dismissed with prejudice. Dismissal of a pro se complaint under Rule 12(b)(6) should ordinarily be without prejudice.  *Gee*, 627 F.3d at 1186.  Dismissal with prejudice is proper only "where it is obvious that the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend."  *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001) (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999)). However, a "dismissal with prejudice is appropriate when the defendants are immune from suit and further amendment of the plaintiff's complaint would be futile."  *Gabriel v. El Paso Combined Cts.*, 842 F. App'x 231, 235 (10th Cir. 2021) (unpublished) (citing *McKinney v. Okla., Dep't of Human Servs.*, 925 F.2d 363, 365-66 (10th Cir. 1991).

Here, plaintiff's claims are dismissed in part under Rule 12(b)(6) and in part because some defendants are entitled to absolute immunity and qualified immunity.  The Court will dismiss plaintiff's claims with prejudice to the extent they are precluded or barred by absolute or qualified immunity.  Because plaintiff is pro se and defendants make no argument that plaintiff cannot cure the other deficiencies in his complaint, the Court will dismiss the rest of plaintiff's claims without prejudice.

C.  **Remaining Claims**

The claims that remain in this case are: subclaim one of Claim One for retaliation in violation of the First Amendment against defendant Jacobson and Claim Nine for breach of contract against defendant Kirby.

For the foregoing reasons, it is

**ORDERED** that Defendants' Motion to Dismiss [Docket No. 79] is **GRANTED in part and DENIED in part**.  It is further

**ORDERED** that plaintiff's claims against defendants Philip J. Weiser, Attorney General of the State of Colorado; Cole Woodward, Assistant Attorney General; William V. Allen, Assistant Attorney General; Jennifer S. Huss, Assistant Attorney General; Robert C. Huss former Assistant Attorney General are **DISMISSED with prejudice**.  It is further

**ORDERED** that subclaims two and four of plaintiff's first claim and subclaim three of plaintiff's seventh claim are **DISMISSED with prejudice**.  It is further

**ORDERED** that subclaims three and five of plaintiff's first claim, subclaims one, two, and four of plaintiff's seventh claim, and plaintiff's second, third, fourth, fifth, sixth, and eighth claims are **DISMISSED without prejudice**.  It is further

**ORDERED** that subclaim one of plaintiff's first claim is **DISMISSED without prejudice**, except to the extent it is brought against defendant Adrienne Jacobson.  It is further

**ORDERED** that every defendant except Adrienne Jacobson and Jay Kirby are dismissed from this case.

DATED September 21, 2023.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge