IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 20-cv-02420-PAB-KAS

DELMART E.J.M. VREELAND, II,

    Plaintiff,

v.

ADRIENNE JACOBSON, Litigation Coordinator, Colorado Department of Corrections, and
JAY KIRBY, former Inspector General, Colorado Department of Corrections,

    Defendants.

_____

**ORDER**
_____

The matters before the Court are the Motion to Schedule a Hearing to Address Violations of Administrative Closure Agreements [Docket No. 163], Recommendation of United States Magistrate Judge [Docket No. 168], Motion for Emergency Status Report Regarding Retaliation and Immediate Request for Emergency Hearing [Docket No. 171], and Motion for Emergency Hearing with Request for Temporary Restraining Order Untill [sic] Conclusion of Hearing [Docket No. 172]. In light of plaintiff's pro se status, the Court construes his filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court does not act as an advocate for a pro se litigant. *See Hall*, 935 F.2d at 1110.

**I. BACKGROUND**

Plaintiff Delmart Vreeland filed this case on August 12, 2020, asserting numerous claims against sixteen defendants, including Jay Kirby, the former inspector general of

the Colorado Department of Corrections, and Adrienne Jacobson, the litigation coordinator for the Colorado Department of Corrections,[1] based on events dating back to the beginning of his incarceration in the Colorado Department of Corrections ("CDOC") in 2008. Docket No. 1. Mr. Vreeland alleges that he has, at various times, acted as a confidential informant for the CDOC Inspector General's Office and other law enforcement agencies gathering information about the criminal activities of other incarcerated persons and CDOC staff members. *Id.* at 8, 9, 14–15, ¶¶ 5, 8–9, 34–36. In exchange for this information, Mr. Vreeland alleges he was promised he could keep his tablet computer and would remain at Arkansas Valley Correctional Facility ("AVCF"). *Id.* at 38.

Mr. Vreeland alleges that, in retaliation for exercising his right to file grievances and lawsuits, including suits filed in this Court, certain defendants began taking adverse actions against him. *See id.* at 8, 17, 19, 20–21, 25, 27, 28–29, ¶¶ 3, 44, 51–52, 55–58, 77, 89. These acts included changing Mr. Vreeland's date of parole eligibility, transferring him to seven different facilities in seventy-two days, seizing Mr. Vreeland's tablet computer and other legal materials, placing Mr. Vreeland at facilities with prisoners who want to harm or kill him, and transferring Mr. Vreeland to facilities with high rates of COVID-19. *Id.* at 28–29, 35.

The complaint asserts nine claims: claim one, retaliation for engaging in protected conduct in violation of the First Amendment; claim two, violation of Fourth Amendment; claim three, "conspiracy with Eighth Amen[dmen]t violations"; claim four,

---

[1] Defendants state that plaintiff misnames Adrienne Sanchez as Adrienne Jacobson. Docket No. 79 at 1. The Court will use the name plaintiff uses in the complaint.

2

deliberate indifference to life safety and mental health; claim five, violation of duty to protect and & equal treatment of law; claim six, violation of Eighth Amendment; claim seven, violation of access to courts; claim eight, violation of Eighth Amendment failure to protect; and claim nine, breach of contract. *Id.* at 28–38. In the portion of Mr. Vreeland's first claim of retaliation brought against Ms. Jacobson, Mr. Vreeland alleges that Ms. Jacobson retaliated against him for his filing of grievances, lawsuits, and complaints against her by causing Mr. Vreeland to be transferred to seven facilities over the course of seventy-two days. *Id.* at 28. Mr. Vreeland's ninth claim, for breach of contract, alleges that Mr. "Kirby and Inspector General's Office entered into a contract with Plaintiff and agreed to allow Plaintiff to remain at AVCF, . . . until release or lower level facility transfer," and to allow plaintiff to keep his tablet in exchange for plaintiff acting as an informant. *Id.* at 38. Mr. Vreeland alleges this contract was breached when he was later transferred and his tablet was seized. *Id.*

On March 1, 2021, defendants filed a motion to dismiss all of Mr. Vreeland's claims. Docket No. 79. On September 21, 2023, the Court granted in part and denied in part defendants' motion to dismiss, dismissing all of Mr. Vreeland's claims except his first claim for retaliation against Ms. Jacobson and his ninth claim for breach of contract against Mr. Kirby. Docket No. 152 at 38, 59, 61.

On February 16, 2024, Magistrate Judge Kathryn Starnella held a status conference in this case. Docket No. 159. At the status conference, the parties indicated that they had resolved the case. Mr. Vreeland indicated that he no longer wished to pursue his claims so that he could focus his attention on criminal appeals in other cases. *See* Docket No. 160 at 1. Counsel for defendants read into the record an

3

email sent to Mr. Vreeland, which the parties stipulated were the terms of the parties' settlement agreement. Counsel for defendants stated

> Plaintiff Mr. Vreeland, and my two clients, the individual defendants, as well as the Colorado Department of Corrections, have agreed and are willing to stipulate this case be administratively closed for a period of 12 months. During that twelve-month period, Mr. Vreeland would be able to reopen this case by February 16, 2025, twelve months from today, if he is transferred out of [the Colorado Territorial Correctional Facility ("CTCF")] if he so chooses. If Mr. Vreeland does not file any motion to reopen the case during the twelve-month period running through February 16, 2025, then this case would be dismissed by you with prejudice with no further action by any party required.

The parties confirmed at the hearing that these were the terms of their agreement. At the hearing, Judge Starnella agreed to issue a recommendation that the case be administratively closed in light of the parties' settlement. On February 28, 2024, Judge Starnella recommended that the Court administratively close this case. Docket No. 160. In her order, Judge Starnella states that

> The parties and the Colorado Department of Corrections . . . stipulate that the case be administratively closed for twelve months from February 16, 2024. They further stipulate that Plaintiff may file a written motion to re-open this case no later than February 16, 2025, if he is transferred from Colorado Territorial Correctional Facility to a different facility. They further stipulate that, if no such motion is filed by February 16, 2025, this case may be dismissed with prejudice by the Court, with no further action required from any party.

*Id.* at 1. Judge Starnella "recommended that this case be administratively closed pursuant to D.C.COLO.LCivR 41.2, subject to reopening for good cause by written motion filed no later than February 16, 2025." *Id.* at 2 (emphasis omitted). On March 19, 2024, the Court accepted Judge Starnella's recommendation and administratively closed the case. Docket No. 161 at 2. The Court's order states that

> This case is administratively closed for twelve months, pursuant to D.C.COLO.LCivR 41.2, subject to being reopened for good cause shown on or before February 16, 2025. . . . Plaintiff may move to reopen the case for good cause on or before February 16, 2025, in the event he is transferred from the

4

>Colorado Territorial Correctional Facility; and . . . [i]f neither side moves to reopen this case by February 16, 2025, the Court may dismiss this case with prejudice without further notice.

*Id.* (emphasis omitted).

On July 3, 2024, Mr. Vreeland filed the Motion to Schedule a Hearing to Address Violations of Administrative Closure Agreements. Docket No. 163. In his motion, Mr. Vreeland claims that "[s]tate actors associated with this case" have retaliated against him by limiting his access to video visitations with his counsel and "legal assistant."[2] *Id.* at 1–5. Mr. Vreeland's motion "requests the Court schedule a hearing so that reopening this matter, and other matters relevant to this case can be addressed." *Id.* at 4. Defendants responded, Docket No. 165, and Mr. Vreeland replied. Docket No. 166. On January 8, 2025, the Court referred the motion to Judge Starnella for a recommendation. Docket No. 167.

On January 16, 2025, Judge Starnella issued a recommendation that the Court deny Mr. Vreeland's motion. Docket No. 168. Considering the parties' agreement to administratively close the case, Judge Starnella found that "[t]here were no conditions, and Plaintiff did not explicitly ask for any, as to conduct by Defendants or other CTCF employees regarding any other aspect of Plaintiff's incarceration, including communications with counsel in his other litigation." *Id.* at 4. Judge Starnella concluded that Mr. Vreeland "has not made even a prima facie showing that the parties' agreement has been violated, i.e., that he has been transferred from CTCF or even threatened with

---

[2] In its response to Mr. Vreeland's first motion to reopen his case, defendants maintain that CDOC staff limited Mr. Vreeland's ability to communicate with Brandon Diaz because Mr. Diaz was helping Mr. Vreeland run a business called Vreeland Legal Inc., which provides *pro se* litigants with legal advice. Docket No. 165 at 5.

transfer, and therefore the Court finds that he has failed to demonstrate good cause to reopen this case." *Id.*

Mr. Vreeland did not file an objection to Judge Starnella's recommendation. Instead, on February 7, 2025, Mr. Vreeland filed two motions for a temporary restraining order.[3] Docket Nos. 171, 172. In his motions, Mr. Vreeland alleges that CDOC staff are forcing him to bunk with another inmate in a single occupancy cell. Docket No. 171 at 2; Docket No. 172 at 2. Mr. Vreeland claims that, by forcing him to accept a cellmate, defendants have violated the holding of *Ramos v. Lamm*, 639 F.2d 559, 562 (10th Cir. 1980), in which he says the Tenth Circuit found that it was a constitutional violation for two inmates to be forced to share a cell like the cell Mr. Vreeland currently occupies at CTCF. Docket No. 172 at 3. Mr. Vreeland asserts that the CDOC is forcing him to share a single occupancy cell in retaliation for Mr. Vreeland filing lawsuits and for seeking to enforce the party's settlement agreement. *Id.* at 4. Mr. Vreeland asks the Court to issue a temporary restraining order that enjoins defendants from (1) forcing him "to double-bunk in a single-man cell," (2) placing Mr. Vreeland in administrative segregation for refusing to share his cell, and (3) transferring Mr. Vreeland to a different facility in retaliation for his motion seeking to enforce the settlement agreement. *Id.* at 5.

On February 11, 2025, Mr. Vreeland filed a supplement to his motions for a temporary restraining order. Docket No. 174. In the supplement, Mr. Vreeland states

---

[3] Mr. Vreeland's first motion is titled Motion for Emergency Status Report Regarding Retaliation and Immediate Request for Emergency Hearing. Docket No. 171. In his motion, Mr. Vreeland requests that the Court "[i]mmediately schedule an emergency hearing to address the ongoing retaliation" and "[i]ssue an order requiring Defendants to remove Plaintiff from segregation and halt any future retaliatory acts." *Id.* at 4. Construing Mr. Vreeland's filing liberally, the Court finds that Mr. Vreeland's motion is a motion for a temporary restraining order because it seeks immediate injunctive relief.

6

that, on February 5, 2025, he was placed in administrative segregation for refusing to share his cell.  *Id.* at 5.  Mr. Vreeland alleges that defendant Jacobson, among other CDOC staff, is responsible for placing Mr. Vreeland in administrative segregation.  *Id.* at 7.  Mr. Vreeland claims that the parties' agreement required his housing circumstances to remain unchanged until February 16, 2025.  *Id.* at 6, 13.  He argues that defendants have violated the terms of the parties' settlement agreement by placing him in administrative segregation.  *Id.*  Mr. Vreeland asks the Court (1) to hold an evidentiary hearing regarding his allegations of retaliation, (2) to issue an order restraining defendants from further acts of retaliation, and (3) to reopen this case and refer the case to the magistrate judge for a scheduling conference.  *Id.* at 18.

On February 11, 2025, Mr. Vreeland filed a second supplement to his motion for a temporary restraining order.  Docket No. 175.  In the second supplement, Mr. Vreeland states that he has been informed that the warden of CTCF intends to transfer Mr. Vreeland to a different facility "as soon as she can."  *Id.* at 1–2.  The Court understands Mr. Vreeland's allegation to be that the warden intends to have Mr. Vreeland transferred shortly after February 16, 2025, which is the end of the twelve-month period covered by the parties' settlement agreement.  Mr. Vreeland requests that the Court issue an order enjoining defendants from transferring Mr. Vreeland and for the Court to hold a hearing on Mr. Vreeland's motions for injunctive relief.  *Id.* at 3.

On February 12, 2025, the defendants filed a response to Mr. Vreeland's motions for a temporary restraining order.  Docket No. 176.  Defendants argue that Mr. Vreeland "has not been transferred from CTCF, which is the only action by the CDOC *prior to February 16, 2025* that could conceivably serve as good cause to enable Plaintiff to

7

reopen this matter." *Id.* at 4.  Moreover, defendants argue that the injunctive relief Mr. Vreeland requests is improper because it would require the Court to involve itself "in matters involving the administration, control, and maintenance by the sovereign states of their penal systems."  *Id.* (quoting *Battle v. Anderson*, 564 F.2d 388, 392 (10th Cir. 1977)).  On February 18, 2025, Mr. Vreeland filed a reply.  Docket No. 177.

## II. LEGAL STANDARD

To succeed on a motion for a preliminary injunction, the moving party must show (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest.  *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009) (citing *Winter v. Natural Res. Def. Council, Inc.*, 555 US. 7, 20 (2008)); *see Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010)).  "[B]ecause a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *Beltronics USA, Inc. v. Midwest Inventory Distribution, LLC*, 562 F.3d 1067, 1070 (10th Cir. 2009) (quoting *Greater Yellowstone Coal. v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003)) (internal quotation marks omitted).  Granting such "drastic relief," *United States ex rel. Citizen Band Potawatomi Indian Tribe of Okla. v. Enter. Mgmt. Consultants, Inc.*, 883 F.2d 886, 888–89 (10th Cir. 1989), "is the exception rather than the rule." *GTE Corp. v. Williams*, 731 F.2d 676, 678 (10th Cir. 1984).  The same considerations apply to the issuance of a temporary restraining order.  *See Lundgrin v. Claytor*, 619 F.2d 61, 63 (10th Cir. 1980).

**III. ANALYSIS**

At the status conference, counsel for defendants read into the record the terms of the parties' settlement agreement.  The parties stipulated that the case be administratively closed for twelve months and that the case be dismissed with prejudice after the twelve months had elapsed.  However, until February 16, 2025, Mr. Vreeland retained the option to file a motion to reopen the case "if he is transferred out of CTCF."  Mr. Vreeland agreed that these were the terms of the parties' settlement agreement, which were consistent with his desire to focus on other litigation, and he stipulated that the Court enter an order administratively closing the case.  Pursuant to the parties' stipulation, the Court entered an order stating that

> This case is administratively closed for twelve months, pursuant to D.C.COLO.LCivR 41.2, subject to being reopened for good cause shown on or before February 16, 2025. . . .  Plaintiff may move to reopen the case for good cause on or before February 16, 2025, *in the event he is transferred from the Colorado Territorial Correctional Facility*; and . . . [i]f neither side moves to reopen this case by February 16, 2025, the Court may dismiss this case with prejudice without further notice.

Docket No. 161 at 2 (emphasis added).  Under the parties' settlement agreement, there was a single contingency under which Mr. Vreeland could choose to reopen this case, namely, his being transferred from CTCF.

In her recommendation, Judge Starnella found that Mr. Vreeland "has not made even a prima facie showing that the parties' agreement has been violated, i.e., that he has been transferred from CTCF or even threatened with transfer, and therefore the Court finds that he has failed to demonstrate good cause to reopen this case."  Docket No. 168 at 4.  The Court agrees with Judge Starnella's conclusion that the terms of the parties' agreement are clear and that Mr. Vreeland may only move to reopen this case if

9

he is transferred from CTCF. *Id.* Moreover, the Court agrees that Mr. Vreeland's allegations regarding CDOC's restrictions on his ability to contact counsel do not demonstrate that he has been transferred from CTCF. *See id.* Mr. Vreeland did not file a timely objection to Judge Starnella's recommendation. Nothing in Mr. Vreeland's motions for a temporary restraining order could be construed as an objection to Judge Starnella's recommendation given that the motions address conduct different from the conduct he alleges in his July 3, 2024 motion for a hearing. *See* Docket No. 171, 172. As such, the Court will accept the recommendation and will deny Mr. Vreeland's motion to reopen this case.

Furthermore, nothing in Mr. Vreeland's motions for a temporary restraining order indicates that CDOC has since transferred him from CTCF. *See* Docket No. 171, 172, 174, 175. Instead, Mr. Vreeland's reply, which is dated February 18, 2025, states that he remains in segregation at CTCF. Docket No. 177 at 4, ¶ 22 (CDOC "refuses to release Plaintiff from segregation"). Mr. Vreeland, therefore, cannot demonstrate good cause to reopen this case because he was not transferred from CTCF before February 16, 2025, which he stipulated was the only circumstance that would entitle him to reopen this case. *See Patterson v. Santini*, 631 F. App'x 531, 534 (10th Cir. 2015) (unpublished) ("in the District of Colorado, a party seeking to reopen a case that has been administratively closed must demonstrate good cause").[4]

---

[4] Even if the parties' stipulation and the Court's order administratively closing this case did not limit the circumstances under which Mr. Vreeland could reopen this case, Mr. Vreeland's motions would still not demonstrate good cause. "Generally, there is good cause to reopen when parties seek to litigate remaining issues that are ripe for review." *Patterson*, 631 F. App'x at 534 (quoting *Phoenix Ins. Co. v. Cantex, Inc.*, No. 13–cv–00507–REB–BNB, 2014 WL 2058106, at *1 (D. Colo. May 19, 2014)). Nothing in Mr. Vreeland's motions indicates that he wishes to pursue his remaining claims against Mr.

Because Mr. Vreeland's motions do not demonstrate that this case should be reopened, Mr. Vreeland's motions for a temporary restraining order are not properly before the Court, and the Court need not consider them.[5]  *See Fields v. Sanchez*, 2024

---

Kirby and Ms. Jacobson.  *See* Docket No. 171, 172, 174, 175.  Instead, Mr. Vreeland appears to seek relief based on separate conduct, namely, CDOC's alleged violation of the settlement agreement.  However, "[i]f the terms of the settlement are breached, relief is appropriate via a breach of contract action in state court."  *Benning v. Georgia*, 2018 WL 5283446, at *2 (S.D. Ga. Oct. 24, 2018) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 382 (1994) ("enforcement of the settlement agreement is for the state courts")).  As this Court's practice standards make clear, "[e]xcept in extraordinary circumstances, the court will not retain jurisdiction (including through open-ended administrative closure) over cases that have been settled. . . .  Any motion or stipulation for dismissal requesting that the court retain jurisdiction after dismissal shall explain in detail the extraordinary circumstances necessitating such an approach."  *See* Practice Standards (Civil cases), Chief Judge Philip A. Brimmer, § I.H.5.  Nothing in the parties' agreement or in the Court's order administratively closing this case indicates that the Court has retained jurisdiction over the parties' settlement agreement.  *See* Docket Nos. 160, 161.  For this additional reason, Mr. Vreeland has not shown good cause to reopen this case.

[5] Even if the Court were to consider Mr. Vreeland's motions for a temporary restraining order, Mr. Vreeland would not be entitled to the relief he seeks.  *See* Docket Nos. 171, 172.  First, to the extent Mr. Vreeland's motions for a temporary restraining order are premised on defendants' alleged violations of the settlement agreement, Mr. Vreeland has not shown that the settlement agreement, whose terms the Court identified *supra* at 9, included the terms Mr. Vreeland claims, and he has not shown that the Court has jurisdiction to enforce the terms of the parties' agreement.  Instead, violations of a settlement agreement are properly addressed through a separate action for breach of contract in state court.  *Benning*, 2018 WL 5283446, at *2 (citing *Kokkonen*, 511 U.S. at 382).  Second, Mr. Vreeland seeks a restraining order against CDOC, who is no longer a party to this case.  *See* Fed. R. Civ. P. 65(d)(2); *Dobler v. Schwartz*, No. 21-cv-01509-PAB-NRN, 2022 WL 1303066, at *1 (D. Colo. Apr. 29, 2022) (denying motion for preliminary injunction because the individual named in the motion was not a party to the lawsuit).  Third, the conduct Mr. Vreeland alleges as the basis for his motions for a temporary restraining order is unrelated to defendants' conduct in the complaint.  *Compare* Docket No. 172 at 2–5 (CDOC and defendant Jacobson have forced Mr. Vreeland to share his cell and have placed him in segregation at CTCF) and Docket No. 175 at 1–3 (CDOC has threatened to transfer Mr. Vreeland from CTCF); *with* Docket No. 1 at 28, 38 (defendant Jacobson transferred Mr. Vreeland from AVCF and defendant Kirby breached agreements not to transfer Mr. Vreeland from AVCF and not to take his tablet computer); *see also Ala. v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1134 (11th Cir. 2005) ("injunctive relief must relate in some fashion to the relief requested in the complaint"); *Means v. Lambert*, 2008 WL 483606, at *1 (W.D. Okla.

11

WL 4437791, at *1 (E.D. Cal. Oct. 4, 2024) ("Any motion filed after July 3, 2024, and before a stay of these proceedings is lifted, will not be considered."); *Patterson*, 631 F. App'x at 534 ("When a court administratively closes a case, the closure generally operates as the practical equivalent of a stay." (quotations and citation omitted)).  Given that Mr. Vreeland has not demonstrated that he has been transferred from CTCF, and because Mr. Vreeland was required to show good cause to reopen this case by February 16, 2025, the Court will dismiss Mr. Vreeland's claims with prejudice.[6]

---

Feb. 20, 2008) ("When the movant seeks intermediate relief beyond the claims in the complaint, the court is powerless to enter a preliminary injunction.").  Finally, Mr. Vreeland's motions do not address his likelihood of success on the remaining claims against Mr. Kirby and Ms. Jacobson, which is an essential element of his claim for injunctive relief.  *RoDa Drilling*, 552 F.3d at 1208 (the moving party must show a likelihood of success on the merits to succeed on a motion for a preliminary injunction).

[6] On February 19, 2025, attorney George Thomas filed a motion pursuant to D.C.COLO.LAttyR 2(b)(1) and D.C.COLO.LAttyR 5(a)–(b) to provide limited scope legal representation for Mr. Vreeland.  Docket No. 178 at 1–2.  Specifically, Mr. Thomas "seeks to enter a limited appearance to represent Plaintiff in this action at his request for the limited purpose of (1) providing this Court with a status update as to the state filings in which undersigned counsel is counsel of record, (2) attempt to contact opposing counsel as to obtain information regarding Mr. Vreeland's custody status, (3) and to inform the Court of C.R.S. 13-45-111."  *Id.* at 2, ¶ 3 (footnotes omitted).  The motion states that counsel "cannot engage in any litigation on the underlying matters, as counsel is appellate and postcoviction counsel."  *Id.*  Mr. Thomas seeks to represent Mr. Vreeland on issues that are not relevant the Court's resolution of this case.  First, the "state filings in which undersigned counsel is counsel of record" are immaterial to Mr. Vreeland's remaining claims, to his motion to reopen this case, and to his motions for a temporary restraining order.  *Id.*  Second, Mr. Thomas does not explain why it is relevant for him to appear as counsel for Mr. Vreeland for the sole purpose of facilitating Mr. Thomas's attempts to contact counsel for defendants, who do not include CDOC, regarding Mr. Vreeland's custody status.  Finally, Colo. Rev. Stat. § 13-45-111 states that "[a]ny person committed to any prison . . . for any criminal or supposed criminal matter shall not be removed from the prison . . ., unless it is by habeas corpus or some other legal writ."  Mr. Thomas makes no effort to explain how this Colorado law is applicable to these proceedings or is otherwise relevant to this case.  Therefore, Mr. Thomas's motion is denied.

## IV.  CONCLUSION

It is therefore

**ORDERED** that the Recommendation of United States Magistrate Judge [Docket No. 168] is **ACCEPTED**.  It is further

**ORDERED** that the Motion to Schedule a Hearing to Address Violations of Administrative Closure Agreements [Docket No. 163] is **DENIED**.  It is further

**ORDERED** that the Motion for Emergency Status Report Regarding Retaliation and Immediate Request for Emergency Hearing [Docket No. 171] is **DENIED**.  It is further

**ORDERED** that the Motion for Emergency Hearing with Request for Temporary Restraining Order Untill [sic] Conclusion of Hearing [Docket No. 172] is **DENIED**.  It is further

**ORDERED** that the Motion for Leave to Provide Limited Scope Representation Pursuant to D.C.COLO.LAttyR 2(b)(1) and LAttyR 5(a)–(b) [Docket No. 178] is **DENIED**.  It is further

**ORDERED** that plaintiff Delmart E.J.M Vreeland's claims are **DISMISSED with prejudice**.  It is further

**ORDERED** that this case is closed.

DATED February 20, 2025.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge